Nylon VICK *v.* STATE of Arkansas

CR 93-668 863 S.W.2d 820

Supreme Court of Arkansas
Opinion delivered November 1, 1993

*William R. Simpson, Jr.*, Public Defender, by: *Sandra S. Cordi*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Cathy Derden*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. The appellant, Nylon Vick, was convicted of rape and kidnapping in 1993. He had previously been convicted of the same charges in 1988, and we affirmed those convictions. *Vick* v. *State,* 299 Ark. 25, 770 S.W.2d 653 (1989). He subsequently filed a *pro se* petition for a writ of habeas corpus in federal court which was ultimately granted on grounds of ineffective counsel and a new trial was conducted in 1993 which resulted in renewed convictions.

The appellant now appeals his 1993 convictions on two grounds: (1) the trial court erred by allowing into evidence the transcript of the testimony of Lillie Oliver, a witness at the previous trial who did not appear at the 1993 trial; and (2) the trial court abused its discretion by denying appellant's motion for a mistrial because of testimony concerning the victim's character. Neither of these arguments has merit, and we affirm.

On June 22, 1988, the victim who was a college student was selling books door-to-door in Little Rock for a company named Southwestern Company. At trial, she testified that on that date, she entered the home of the appellant to sell him books. During her presentation, Vick left the living room and returned with a

pistol in his hand. He restrained the victim for a period of three days, forced her to use drugs, and raped her orally, anally, and vaginally. The rapes occurred repeatedly. She attempted to escape once and was captured and dragged back into the house. On the third day, she escaped successfully, ran to a nearby house, and contacted the police. She identified Vick from a photo spread at the Little Rock Police Department.

On retrial, the jury found Vick guilty of two counts of rape. He was sentenced to two terms of life in prison to be served consecutively. He was also found guilty of kidnapping and sentenced to an additional term of thirty years.

## I. FORMER TESTIMONY OF UNAVAILABLE WITNESS

The appellant initially contends that the trial court abused its discretion by allowing the State to read to the jury the testimony of a purportedly unavailable witness, Lillie Oliver, given at the previous trial. In support of this contention, the appellant posits a two-prong argument. First, he argues that the State failed to make a good faith effort to locate Lillie Oliver by reasonable means as required by Ark. R. Evid. 804(a)(5). Secondly, he argues that it was improper to admit the former Oliver testimony because the federal district court granted a writ of habeas corpus based on ineffective counsel at the first trial, which casts doubt on defense counsel's cross-examination of Oliver. Thus, under his theory, the former testimony of Ms. Oliver was not sufficiently developed to constitute a hearsay exception under Ark. R. Evid. 804(b)(1). Finally, he argues that his right to confront a witness under the Sixth Amendment was denied him.

A witness is unavailable when absent from the trial and the proponent of the statement has been unable to procure the attendance or testimony by process or other reasonable means. Ark. R. Evid. 804(a)(5); *Register v. State*, 313 Ark. 426, 855 S.W.2d 320 (1993). The party offering the testimony has the burden of proving the witness unavailable. *Register v. State, supra; Bussard v. State*, 300 Ark. 174, 778 S.W.2d 213 (1989). Also, the party seeking to introduce the prior testimony of an unavailable witness must show that a good faith effort has been made to procure the attendance of the missing witness. *Register*

v. *State, supra*; *Meine* v. *State,* 309 Ark. 124, 827 S.W.2d 151 (1992).

If a witness is unavailable, it is clear under our Rules of Evidence that former transcribed testimony of that witness may be presented at a second trial:

> (b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

> (1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Ark. R. Evid. 804(b)(1).

At a pre-trial hearing, Durthey Bishop, an investigator for the office of the prosecuting attorney, described his work to locate Ms. Oliver in detail. He stated that he began the search in December of 1992 with a subpoena which listed Ms. Oliver's home address and telephone number. He checked the address and found that her house had been torn down. He then obtained a subpoena to research Ms. Oliver's past telephone records and found that her telephone had been disconnected. Bishop then contacted gas, electricity, and water utilities. He sought information indicating shut-off dates for old services and reconnect dates for new services. Nothing new was discovered. Bishop checked these records twice to be sure of their accuracy.

Additionally, Bishop asked about Ms. Oliver in her old neighborhood in Little Rock. Again, he was unsuccessful in obtaining information leading to Ms. Oliver's whereabouts. He also contacted Social Services to determine whether Ms. Oliver had received any type of support. This inquiry also was unrevealing. At the suggestion of Social Services, Bishop initiated a search of local nursing homes. During the pretrial hearing, he admitted that he had only contacted one nursing home but had made plans to contact several more in the area. He also stated that another

caseworker had begun to check each nursing home. Bishop next reviewed criminal records. Though some criminal information was uncovered for a Lillie Oliver, he concluded that the person was not the Lillie Oliver in question due to an age discrepancy.

The appellant counters this testimony with the argument that his check of criminal records divulged a Lillie Oliver which the State was unable to locate. Based on this finding, appellant asserts that the State has not demonstrated a good faith effort to find Oliver. The appellant argues too that the State's failure to check each nursing home in Pulaski County is yet another demonstration of its lack of good faith.

■ We disagree. The State exerted considerable effort in its search for Oliver, and the search was thorough. A good faith effort to procure Oliver's presence for trial was certainly illustrated by Bishop's testimony, even though each nursing home in Pulaski County was not visited and a "Lillian Oliver" listed in the criminal records was ultimately not found. We have no difficulty in affirming the trial court's finding of unavailability under Ark. R. Evid. 804(a)(5).

Nor should Ms. Oliver's testimony be barred for lack of opportunity to develop her testimony at the first trial under Ark. R. Evid. 804(b)(1) or as a violation of the appellant's right to confront witnesses under the Sixth Amendment. *Mancusi* v. *Stubbs*, 408 U.S. 204 (1972).

The essence of Ms. Oliver's testimony at the previous trial with pertinent cross-examination follows:

> OLIVER: Well, I was standing on the edge of my yard talking with one of those sanitary boys that works for the Sanitary Department, and this girl come running up. She was frightened to death. To me she was.
>
> . . . .
>
> And she grabbed me, and she asked me could I help her. And I asked her what's the matter? I said, "No." I said, "I cannot help you." I said, "You just keep running." I said, "Run on around there." I said, "I can't help you." I said, "What is it?" She said there was a man after her to kill her. I said, "Well, honey, run right around that other house,"

and she did.

Cross-examination then proceeded as follows:

> DEFENSE COUNSEL: Mrs. Oliver, I just have one question. Did you see anybody running after her?
>
> OLIVER: Well, I never seen nobody.
>
> DEFENSE COUNSEL: Okay.
>
> OLIVER: I did not.
>
> DEFENSE COUNSEL: Okay, you stood out there sometime after she passed you?
>
> OLIVER: Well, a few minutes later, because I was so weak that I couldn't stand too much longer.
>
> DEFENSE COUNSEL: And, okay, you were with a garbage man?
>
> OLIVER: Yes, but he was getting ready to pull off, then, at that time.
>
> DEFENSE COUNSEL: Okay.
>
> OLIVER: Uh huh (Meaning yes).

After the preceding testimony was read into the record, counsel for the appellant proffered questions to the judge which he would have asked had Ms. Oliver been present at the trial:

> If the live witness were here, I would refer to Defense Exhibit No. 1 (a photograph of the area where the appellant and Ms. Oliver lived) and ask where she lived in that (sic) to give the jury a better idea of where her house was and what her viewing position was, and if it conflicted, in fact, with the path that this lady was supposed to have run.

■ We first observe that the appellant clearly had the *opportunity* to cross-examine Ms. Oliver at the first trial under the hearsay exception for former testimony set out at Ark. R. Evid. 804(b)(1). Moreover, we do not agree that defense counsel's cross-examination of Ms. Oliver, albeit brief, warrants a reversal in this case. Our conclusion is bolstered by the questions proffered by counsel at the second trial which he contends he

would have asked had she been present. The questions about location of the houses and Ms. Oliver's ability to see the victim's path of escape do not appear to develop Ms. Oliver's testimony appreciably more than the questions asked. Hence, we are unpersuaded that those questions are crucial to establishing the reliability of Oliver's testimony. At best, the proffered questions appear to be of marginal benefit to the appellant's cause. In sum, we conclude that the cross-examination was sufficient to afford the trier of fact a reasonable basis to evaluate the truth of Ms. Oliver's statements. *See Scroggins* v. *State*, 312 Ark. 106, 848 S.W.2d 400 (1993).

We turn next to the Confrontation Clause argument, which is related to the hearsay argument. The federal district court made no specific finding that defense counsel was ineffective in cross-examining Lillie Oliver at the first trial. In 1972, the United States Supreme Court decided a similar issue in *Mancusi* v. *Stubbs, supra.* There, the Court held that when a witness is unavailable and a party seeks to introduce former testimony of that witness as evidence in a new trial, such testimony meets the requirements of the Confrontation Clause if that prior testimony bears "indicia of reliability." As in the instant case, in *Mancusi* the first conviction of the defendant was reversed because of ineffective assistance of counsel. However, in making that determination, the habeas court did not focus on the cross-examination of witnesses. Defense counsel was presumed ineffective because the time between appointment of counsel and the trial date was so short — four days. The *Mancusi* Court concluded that because the habeas court had not addressed itself to the effectiveness of the examination of the unavailable witness, the mere finding of ineffectiveness due to the brevity of preparation time did not determine the reliability of the former testimony.

Likewise, in the habeas corpus review in the case before us, the premise for ineffectiveness was prior counsel's deficient investigation and preparation prior to trial. No specific finding was made that the cross-examination of Lillie Oliver was deficient or inadequate. As in *Mancusi*, we cannot say that the finding of ineffectiveness in trial preparation by the federal district court casts doubt on the reliability of Ms. Oliver's testimony. Nor do we conclude that the cross-examination itself rendered her testimony unreliable. We note on this point that

reliability may be determined by the fact that the declaration to be admitted falls within a firmly rooted hearsay exception. *Bourjailly* v. *United States*, 483 U.S. 171 (1987); *Bussard* v. *State, supra.* Here, Ms. Oliver's testimony falls within such an exception as former recorded testimony. There was no error in the admission of Ms. Oliver's former testimony.

## II. CHARACTER TESTIMONY

For his second point, the appellant contends that the trial court should have granted a mistrial when three witnesses gave testimony describing the victim's character in violation of Ark. R. Evid. 404(2).

■ A motion for mistrial is only appropriate where the error is beyond repair and cannot be corrected by any curative relief. *Sullinger* v. *State*, 310 Ark. 691, 840 S.W.2d 797 (1992); *Ashley* v. *State*, 310 Ark. 575, 840 S.W.2d 793 (1992). The trial court has wide discretion in granting or denying a motion for mistrial, and the decision of the trial court will not be reversed except for an abuse of discretion or manifest prejudice to the complaining party. *Davasher* v. *State,* 308 Ark. 154, 823 S.W.2d 863 (1992).

■ The first testimony complained of was given by DeShonda Davis:

> After we all looked out, well, see, my mom and my stepdad, they didn't believe us, because they figured that (the victim) wouldn't be with anyone, you know, like him.

Following this statement, Vick objected and moved for a mistrial. The trial court correctly denied this motion since any error occasioned by this statement was plainly not beyond repair. *Sullinger* v. *State, supra.* The appellant then requested an admonishment. The court obliged and correctly admonished the jury to disregard the statement.

■ The second statement was given by Sandra Smith who stated about the victim: "She was a real nice young lady." The appellant again moved for a mistrial which was denied. However, in this instance the appellant failed to request an admonition, and none was given. This statement by Smith hardly warranted the drastic remedy of a mistrial declaration. Moreover, because the

appellant failed to request curative relief, the trial court did not err in failing to admonish the jury. *Wheat v. State*, 295 Ark. 178, 747 S.W.2d 112 (1988). It is clearly the appellant's obligation to ask for a curative instruction, and the failure to do so will not inure to his benefit on appeal. *Sullinger v. State, supra; Jurney v. State*, 298 Ark. 91, 766 S.W.2d 1 (1989).

 The third and final remarks complained of were made by Sally Morris, who stated:

> [T]hey recruit college students, and they sell us on being above average, you know.
>
> . . . .
>
> They didn't take the average student.

Following these remarks, Vick failed either to object and request an admonishment or to move for a mistrial. Accordingly, any argument regarding this statement is not preserved for appeal. *Davasher v. State, supra.*

Nor do we give credence to the appellant's contention that the cumulative effect of these statements was prejudicial. We have entertained an argument of cumulative error in rare and egregious cases. *See, e.g., Dillon v. State*, 311 Ark. 529, 844 S.W.2d 944 (1993). This is not such a case. No prejudice aggregated under these facts to require a reversal.

The record has been reviewed in this case for prejudicial error pursuant to Ark. Sup. Ct. R. 4-3(h), and none has been found.

Affirmed.