Eilert BERTRAND *v.* STATE of Arkansas

CR 05-303                                              214 S.W.3d 822

Supreme Court of Arkansas
Opinion delivered October 6, 2005

[Rehearing denied November 3, 2005.]

*William R. Simpson, Jr.*, Public Defender, *Lott Rolfe IV*, Deputy Public Defender, by: *Erin Vinett*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Eilert Bertrand appeals from his conviction for capital murder and from his sentence of life imprisonment without parole. His sole point on appeal is that the circuit court erred in allowing the prosecutor to read an absent witness's prior sworn testimony from a suppression hearing into the record. We affirm the judgment of conviction.

The facts are these. On the evening of June 26, 2004, the victim, Antonio Alford, was sitting in the driver's seat in his car in the parking lot of the Woodbridge Apartments on John Barrow Road in Little Rock. According to witnesses at trial, a man called "D" was sitting in the front passenger's seat, and Bertrand was sitting in the back, behind the driver's seat.[1] Bertrand raised his gun and shot Alford two times in the back of the head. He then started to get out of the car, and D opened the car door and began running, at which time Bertrand began shooting at him. Bertrand ran into nearby woods, where he disposed of his gun.

The next day, Bertrand paid an individual to drive him back to the Woodbridge Apartments, where he retrieved two bags and the gun. One witness, Stephanie Ruffin, called the Police Depart-

---

[1] "D," according to the testimony, also goes by the name of "Regulator."

ment when she saw Bertrand, and Bertrand was arrested and charged with capital murder. She later identified Bertrand from a photo lineup as a person who had been at the Woodbridge Apartments the night of the shooting. At the ensuing suppression hearing regarding the photo identification, Ms. Ruffin testified about Bertrand's presence at the apartments. The circuit court refused to suppress the evidence or to disallow an in-court identification.

During Bertrand's trial and over his objection, the prosecutor presented the suppression-hearing testimony of Ms. Ruffin, who the prosecution contended was an unavailable witness for purposes of the trial. Following the trial, Bertrand was convicted and sentenced to life imprisonment without parole.

Bertrand contends, as his sole point on appeal, that the circuit court's ruling regarding Ms. Ruffin's testimony was contrary to Arkansas's hearsay law, as he did not have a similar motive to develop Ms. Ruffin's testimony at the suppression hearing as he did at trial. He contends that the suppression proceeding and his trial were different in terms of what was at stake at the respective proceedings and the required burden of proof. He further asserts that the purpose of both proceedings differed in that during the suppression hearing, the sole issue was the validity of the pretrial identifications of him, whereas during the trial, he immediately conceded his identity. Thus, it was not at issue. He also maintains that his cross-examination was insufficient at the suppression hearing, in that during his cross-examination of Ms. Ruffin, defense counsel made no attempt to impeach her; nor did he engage in a wide-range of cross-examination of her factual knowledge or her knowledge of the victim. He acknowledges that defense counsel only asked her six questions at the suppression hearing.

Alternatively, Bertrand claims that reversal is warranted under his constitutional right to confront the witnesses against him. On this point, he contends that his cross-examination of Ms. Ruffin during the suppression hearing was not the meaningful, adversarial testing that the Sixth Amendment requires. With respect to preservation of his two claims under hearsay and the Confrontation Clause, Bertrand states that both are preserved for appeal, as his defense counsel objected on both bases.

We first observe that, in order for Ms. Ruffin's suppression-hearing testimony to be admissible, it must meet the requirements of Arkansas Rule of Evidence 804(b)(1). Rule 804(b)(1) provides:

(b) *Hearsay Exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) *Former Testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Ark. R. Evid. 804(b)(1) (2005). Bertrand urges that his motive for developing the testimony at the suppression hearing was not similar to his motive at the trial. We disagree.

We initially consider what is meant by a similar motive in the two proceedings at issue. In *Proctor v. State,* 349 Ark. 648, 79 S.W.3d 370 (2002), this court retraced its jurisprudence regarding Rule 804(b)(1). We observed that the admission of prior testimony requires both the opportunity to cross-examine the witness and a similar motive to develop his or her testimony. We further noted that we have consistently held that (1) where the prior testimony was at a full-fledged proceeding, (2) where the motive to cross-examine was similar, and (3) where the witness was unavailable, the testimony was admissible under Rule 804(b)(1). *See Proctor v. State, supra.* In *United States v. DiNapoli,* 8 F.3d 909 (2d Cir. 1993), a decision which this court quoted in *Proctor,* the Second Circuit Court of Appeals set out its approach for determining similarity of motive:

> The proper approach, therefore, in assessing similarity of motive under Rule 804(b)(1) must consider whether the party resisting the offered testimony at a pending proceeding had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue. The nature of the two proceedings — both what is at stake and the applicable burden of proof — and, to a lesser extent, the cross-examination at the prior proceeding — both what was undertaken and what was available but forgone — will be relevant though not conclusive on the ultimate issue of similarity of motive.

8 F.3d at 914-15. In addition, Jack Weinstein in his celebrated treatise on evidence comments that "[b]ecause similar motive does not mean identical motive, the similar-motive inquiry is inherently factual,"

and is "narrowly concerned with ensuring the reliability of the evidence admitted at trial." 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 804.04[5] (2d ed. 1997).

This court has previously recognized in the past that a similar motive for cross-examination could be had at both a suppression hearing and a trial. *See Scroggins v. State*, 312 Ark. 106, 848 S.W.2d 400 (1993). In *Scroggins*, a confidential informant testified at a suppression hearing regarding a drug deal he participated in with Scroggins. The confidential informant was murdered prior to trial and a transcription of his testimony at the suppression hearing was admitted at trial over Scroggins's objection. Quoting from prior case law, this court stated that in the case of a preliminary hearing, admission of testimony from that hearing at trial depends on what kind of hearing is involved and whether it is a "full fledged" hearing or a limited one. 312 Ark. at 111, 848 S.W.2d at 403 (quoting *Scott & Johnson v. State*, 272 Ark. 88, 92-93, 612 S.W.2d 110 (1981)). Applying this analysis, we concluded that the confidential informant's testimony was clearly admissible, in that the confidential informant was unavailable, and "the circumstances of the suppression hearing insured the reliability of his testimony which was given under oath and before a judicial tribunal." *Id.*, 848 S.W.2d at 403. We observed that Scroggins's counsel thoroughly cross-examined the confidential informant and attempted to impeach him at the suppression hearing. We then concluded that the cross-examination was "well-developed," and accordingly, that the testimony was reliable and admissible under Ark. R. Evid. 804(b)(1). *Id.* at 112, 848 S.W.2d at 403.

As in *Scroggins*, Stephanie Ruffin appeared and testified at Bertrand's suppression hearing at which he sought to suppress her photo identification of him and any resulting in-court identifications. It is important for purposes of this opinion to focus on exactly what her testimony was at the suppression hearing. Her testimony was that she lived in apartment 51 of the Woodbridge Apartments on the day of the homicide and was home at the time the victim was shot and killed in the parking lot. She testified that she knew both the victim and Bertrand, and she identified Bertrand for the circuit court. She further stated that before the victim's murder, both he and Bertrand were in her apartment and that ten or fifteen minutes after they left her apartment, she heard gunshots. She testified that after the shooting, she went to the Little Rock Police Department and gave a statement in which she told police that the two men had been at her apartment right

before the shooting. She then identified Bertrand out of a photo spread prepared by police officers. On cross-examination, Ms. Ruffin testified that she did not see the shooting and that she only heard gunshots. She further testified that there was another individual with the victim and Bertrand when they left her apartment.

Unlike *Scroggins*, where the confidential informant's testimony was used to prove the crime itself, Ms. Ruffin's testimony was only used by the State at the suppression hearing and trial to place Bertrand at the scene of the crime shortly before the shooting began. It was not used as eyewitness testimony for the crime itself, because Ms. Ruffin did not see the actual shooting.

■ We next examine the nature of the two proceedings (the suppression hearing and the trial) and determine whether the suppression hearing was a "full fledged" hearing for purposes of establishing similar motive. *See Proctor v. State, supra.* We conclude that it was. The prosecutor presented Ms. Ruffin's testimony to the circuit court at the suppression hearing to place Bertrand at the murder scene, albeit she did not see the shooting itself. The prosecutor used that testimony to accomplish the same objective at trial. While Bertrand claims that his identity was not at issue at the trial, because he later conceded his presence, the prosecution still had to present its case, which necessitated Ms. Ruffin's testimony that Bertrand was in her apartment prior to the murder.

■ We conclude that Bertrand's defense counsel had a similar motive at both proceedings in his cross-examination. At both proceedings, he needed to show either that she was mistaken in her identification or that she was biased in some way. Had impeachment of Ms. Ruffin been necessary at trial, it would have been equally as important at the suppression hearing, if not more so, to suppress the photo identification.

■ Despite Bertrand's contention on appeal that he would have further developed his cross-examination of Ms. Ruffin at the suppression hearing had he known that she would be unavailable at trial, the suppression hearing was a "full fledged" hearing where defense counsel could have impeached Ms. Ruffin had he so chosen. Bertrand's counsel was able to develop that Ms. Ruffin did not see the murder and that Bertrand left her apartment with the victim and one other person. In addition, during the hearing on this issue at the trial, defense counsel admitted that the circuit court had given him an opportunity at the suppression hearing to

"explore other avenues" as far as what Ms. Ruffin knew and her relationship with Bertrand and the victim, but he did not take it. What the circuit court did do was allow defense counsel to impeach Ms. Ruffin's testimony at trial by any inconsistent statements Ms. Ruffin may have given to police officers.

Our conclusion of similar motive is bolstered by the fact that Bertrand fails to show this court on appeal precisely how he would have impeached Ms. Ruffin or otherwise expanded his cross-examination of her at trial. Nor did he proffer to the circuit court what he hoped to garner from Ms. Ruffin through cross-examination at trial, had she been available. We are, therefore, left to speculate on how he was prejudiced. Of course, Bertrand would have been limited at trial by the scope of the prosecutor's direct examination, and direct examination was used merely to place Bertrand at the Woodbridge Apartments. It had nothing to do with Bertrand's defense of self-defense.

Finally, it is clear to this court that Ms. Ruffin's testimony in placing Bertrand at the crime scene was cumulative. As outlined in Bertrand's brief, two other witnesses at trial placed him at the crime scene: Ron Blackmon and Michael Jones. And Bertrand himself admitted he was there. Hence, even had it been error to read Ms. Ruffin's prior testimony to the jury, the error was harmless.

Because Bertrand had a similar motive to develop Ms. Ruffin's cross-examination at both the suppression hearing and the trial, we hold that the circuit court did not err in admitting the testimony as not hearsay pursuant to Rule 804(b)(1).

Bertrand also raises a confrontation-clause argument. We conclude that this issue is not preserved. It appears from the abstract that Bertrand did object on both hearsay grounds and "Federal constitutional grounds," arguing that defendants in criminal cases have a constitutional right to cross-examine all potential witnesses against them.

We are aware that, in *Proctor v. State, supra,* the State asserted that Proctor had not preserved his confrontation-clause argument because he failed to obtain a ruling on that specific issue from the circuit court. This court, however, disagreed and noted that Proctor had made both a hearsay and a confrontation-clause argument. The circuit court ruled that the prior testimony was admissible, but failed to rule specifically on either the hearsay or

confrontation-clause point. We refused to hold that Proctor had failed to obtain a ruling on his confrontation-clause argument, because the circuit court did not address either argument made.

In the instant case, however, the circuit court specifically ruled that Ms. Ruffin's prior testimony was not *hearsay*. The circuit court did not address the confrontation-clause point, and defense counsel did not request such a ruling. Because of this lapse in failing to obtain a ruling on his confrontation-clause argument, we hold that it is not preserved for our review. *See Huddleston v. State*, 347 Ark. 226, 61 S.W.3d 163 (2001); *Jackson v. State*, 334 Ark. 406, 976 S.W.2d 370 (1998).

A review of the record has been performed in accordance with Supreme Court Rule 4-3(h), and no reversible error has been found.

Affirmed.

GLAZE, J., concurs.

TOM GLAZE, Justice, concurring. I concur with the result reached by the majority, but respectfully disagree with its reasoning. The majority has affirmed the trial court's decision to admit the former testimony of Stephanie Ruffin under the Ark. R. Evid. 804(b)(1) exception to hearsay. To be admissible under Rule 804(b)(1), the "party against whom the testimony is now offered" must have had "an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Bertrand did not have a similar motive to develop Ruffin's testimony at the suppression hearing, so Rule 804(b)(1) is inapplicable.

*Proctor v. Arkansas*, 349 Ark. 648, 79 S.W.3d 370 (2002), explained the "similar motive" requirement of Rule 804(b)(1) as follows:

> The proper approach, therefore, in assessing similarity of motive under Rule 804(b)(1) must consider whether the party resisting the offered testimony at a pending proceeding had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue. The nature of the two proceedings — both what is at stake and the applicable burden of proof — and, to a lesser extent, the cross-examination at the prior proceeding — both what was undertaken and what was available but forgone — will be relevant though not conclusive on the ultimate issue of similarity of motive.

*Proctor*, 349 Ark. at 667 (quoting *United States v. DiNapoli*, 8 F.3d 909, 910 (2d Cir.1993).

In *Proctor*, this court held that a police officer's prior testimony regarding Proctor's confession at a bond-revocation hearing was inadmissible. In reaching its decision, our court said, "It is therefore clear that what is at stake in a bond-revocation hearing is substantially different from what is at stake in a full-fledged hearing at trial." *Proctor*, 349 Ark. at 667. Like *Proctor*, the proceedings in this case are substantially different. In short, the stakes at the suppression hearing were different from those at a full trial, and the burdens of proof were different as well.

The majority relies on *Scroggins v. State*, 312 Ark. 106, 848 S.W.2d 400 (1993). In *Scroggins*, this Court recognized that a similar motive for cross-examination could be had at both a suppression hearing and at trial, but the facts there were significantly different requiring a different result. The *Scroggins* opinion emphasized that the former testimony was well developed because counsel for the defense was able to cross-examine the witness thoroughly and was not limited to the purpose of the hearing. In *Scroggins*, the purpose and issue at the suppression hearing was to determine whether taped phone conversations between Cains, a confidential informant, and Scroggins should have been suppressed; Scroggins went far beyond the taped-conversations-issue in his cross examination. There, Scroggins's primary purpose in cross-examination was to impeach Cains, and he did so, covering eight full pages of hearing transcript. *Scroggins*, 312 Ark. at 112.

In the present case, unlike *Scroggins*, the prior testimony at the suppression hearing cannot be characterized as "well developed." Here, the issues raised at the two proceedings were completely different. At the suppression hearing, the state offered evidence to present testimony identifying Bertrand and placing him at the crime scene. Bertrand asked only six questions of Ruffin, limiting his inquiry solely to the identity issue; at trial, however, his defenses were *mens rea* and self defense.

It can be inferred that Bertrand's strategy at the suppression hearing was to limit his questioning regarding the two defenses he intended to raise at trial. Accordingly, Bertrand asked just six questions of Ruffin, all relating to the identity issue. The following questions serve as examples of what could have been asked of Ruffin if Bertrand had confronted the evidence bearing on the self defense and *mens rea* issues:

- Did she witness any quarrel between Bertrand and the victim, Antonio Alford?
- Did she know Alford's reputation in the community?
- How was Alford behaving during the time leading up to his murder?
- How did Alford act after smoking sherm?
- Was he combative or antagonistic?
- Did he have a propensity to carry a gun?
- Why did they decide to leave the apartment?
- Were they asked to leave?

Because Ruffin was absent from trial, Bertrand had no opportunity to ask these or other relevant questions bearing on his two defenses. Again, given the circumstances, it was proper strategy for Bertrand to limit his questioning of the witnesses to the identity issue at the suppression hearing.

Overall, given the nature of the prior suppression proceeding and the under-developed cross-examination, it is unreasonable to conclude that Bertrand had a similar motive to develop Ruffin's prior testimony. Thus, I disagree with the majority's decision to admit Ruffin's testimony under Ark. R. Evid. 804(b)(1), but concur with the majority's decision because the trial court's error was harmless to the outcome of the case.

An error in the admission of hearsay evidence does not automatically result in a reversal if the error was harmless. *Jones v. State*, 326 Ark. 61, 931 S.W.2d 83 (1996). Where evidence of guilt is overwhelming and the error slight, we can declare the error harmless and affirm. *Bledsoe v. State*, 344 Ark. 86, 39 S.W.3d 760 (2001). As the majority notes, Ms. Ruffin's testimony in placing Bertrand at the crime scene was cumulative to the testimony of witnesses Ron Blackmon and Michael Jones. No prejudice results where the evidence erroneously admitted was merely cumulative and we do not reverse for harmless error in the admission of evidence. *Gaines v. State*, 340 Ark. 99, 8 S.W.3d 547 (2000). The jury had overwhelming evidence upon which to convict Bertrand and the trial court's error in no way prejudiced Bertrand. For this reason, Bertrand's conviction should be affirmed.