Kelvin BEASLEY *v.* STATE of Arkansas

CR 06-1400

258 S.W.3d 728

Supreme Court of Arkansas

Opinion delivered June 14, 2007

[Rehearing denied September 6, 2007.*]

---

• BROWN, J., would grant rehearing.

*Bill Luppen*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Chief Justice. Appellant Kelvin Beasley was convicted by a Pulaski County jury of capital murder in the shooting death of Jermaine Jacko and sentenced to life in prison without parole. For reversal, Beasley argues that the circuit court abused its discretion in allowing the State to introduce into evidence an absent witness's testimony from a bond-reduction hearing under the hearsay exception stated in Rules 804(a)(5) and (b)(1) of the Arkansas Rules of Evidence. He also argues that the circuit court abused its discretion in allowing a certified transcript of a witness's testimony to be read to the jury in place of playing the court reporter's

audio recording of the witness's statement. As this is a criminal appeal in which a sentence of life imprisonment has been imposed, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). We reverse and remand to the circuit court.

On July 10, 2005, Jermaine Jacko was shot and killed while at the Woodbridge Apartments on John Barrow Road in Little Rock. Lakisha Smith and Lashay Elmore were at the apartment complex when the shooting occurred, and both gave statements to the police shortly after the murder. Lakisha told police that she saw Beasley and two other individuals with the victim immediately prior to the shooting. She also identified Beasley as the shooter and stated that at the time of the shooting, Beasley was wearing a red t-shirt.

At the bond-reduction hearing, Beasley challenged the evidence arrayed against him. While Lakisha affirmed, under oath at the hearing, Beasley's presence at the scene and how he was dressed, she said the statement she had previously made identifying him as the shooter was "a lie" and that she had only repeated to police what her friend Lashay told her to say. Lakisha now claimed at the bond-reduction hearing that she never saw who shot the victim. On cross-examination, the State impeached Lakisha with the prior inconsistent statement she gave to the police. Beasley's counsel did not conduct a redirect examination of Lakisha.

Prior to trial, Beasley filed a motion in limine to prevent the State from introducing into evidence Lakisha's testimony from the bond-reduction hearing. The State wanted to call Lakisha to testify at trial; however, attempts to locate and subpoena her were unsuccessful. Accordingly, the State moved to have Lakisha's former testimony admitted pursuant to Rules 804(a)(5) and (b)(1) of the Arkansas Rules of Evidence. Beasley contended that Lakisha's testimony was hearsay and that the admission of the testimony would violate his Sixth Amendment right to confront the witnesses against him, in violation of the United States Constitution and the Arkansas Constitution. The circuit court concluded that Lakisha was an unavailable witness and that the testimony was admissible through the introduction of the certified transcript.

Beasley objected, contending that the audiotape used by the court reporter to prepare the certified transcription of Lakisha's testimony was the "best evidence" and should be played in court. The circuit court considered Beasley's argument, but learned that the audiotape was in the possession of a former court reporter, who lived approximately 45 miles from Little Rock. Noting that there

was no issue as to the authenticity of the transcript, which was certified, the circuit court proceeded with the admission of the transcript and allowed a deputy prosecuting attorney to read Lakisha's testimony into the record. Beasley now brings this appeal.

Pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004), "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68. "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68-69. Rules 804(a)(5) and (b)(1) of the Arkansas Rules of Evidence deal with similar subject matter and contain, in pertinent part, the following language:

> Hearsay exceptions — Declarant unavailable.
>
> (a) *Definition of Unavailability.* "Unavailability as a witness" includes situations in which the declarant:
>
> (5) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), his attendance or testimony) by process or other reasonable means.
>
> (b) *Hearsay Exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness.
>
> (1) *Former testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, . . . if the party against whom the testimony is now offered, . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

In this case, there is no dispute that Lakisha's testimony at the bond-reduction hearing is testimonial evidence, nor is there any dispute that Lakisha's testimony is hearsay. As the proponent of former-testimony hearsay, the State was required to satisfy the requirements of Rules 804(a) and (b).

We begin with Beasley's argument that the State failed to prove that Lakisha was an unavailable witness. The party offering the testimony has the burden of proving the witness unavailable.

*Vick v. State,* 314 Ark. 618, 863 S.W.2d 820 (1993); *Register v. State,* 313 Ark. 426, 855 S.W.2d 320 (1993); *Bussard v. State,* 300 Ark. 174, 778 S.W.2d 213 (1989). Also, the party seeking to introduce the prior testimony of an unavailable witness must show that a good-faith effort has been made to procure the attendance of the missing witness. *Vick, supra; Register, supra; Meine v. State,* 309 Ark. 124, 827 S.W.2d 151 (1992).

To show that Lakisha was unavailable, the prosecutor called investigator Mike Ricard, who was assigned to locate and serve Lakisha with a subpoena for trial. Ricard testified that he received a subpoena for Lakisha on January 23, 2006, and began his attempts to locate her. Ricard recounted his search, starting with Lakisha's last known address at the apartment on John Barrow Road in Little Rock, where the shooting had occurred. He learned from the apartment manager that Lakisha had moved out. Ricard testified that he ran Lakisha's identifying information in both the NCIC and ACIC databases and learned that she had warrants out of the Faulkner County Sheriff's Department, as well as the North Little Rock Police Department and the Sherwood Police Department. Ricard stated that he placed Lakisha's name on a jail watch list in the event she was arrested on any of the warrants, and, as a result he would receive notification of her whereabouts.

Ricard also testified that he checked the Little Rock Police Department records and found an address that was current in October 2005. He verified the location and the resident who lived there as Fayrene Ellison. Ricard said that he also learned that it was a possibility that Lakisha was staying with her aunt, Trena Hunt, who was listed at the address of 7900 Woodhaven, Little Rock.

When Ricard checked the Woodhaven address, he left a card and a copy of the subpoena at that location. However, when he returned to the location a week later, the house appeared to be vacant, and the telephone had been disconnected.

Ricard testified that he was able to obtain the name and address of Lakisha's mother, Tracy Smith, who lived at 4 Clifton Drive, in Little Rock. When he went to the residence, he made contact with a woman who identified herself as "Mrs. Rogers." The woman said that Tracy Smith did not live there and that she continued to receive mail in Tracy's name.

Eventually, Ricard located Fayrene Ellison, who had been Lakisha's roommate at the time of the murder. It was Ellison's opinion that Lakisha was staying with her grandmother some-

where in southwest Little Rock, so Ricard attempted to verify that information. In doing so, he subsequently made contact with Lakisha's aunt, Rhonda Smith. Rhonda said that she had not had any contact with Lakisha because she stole from her. She did, however, give Ricard the name of Lakisha's grandmother, Emma Hunt. Ricard had several old addresses for Hunt, but nothing current, until he located a vehicle-accident report that listed Hunt's address as 7909 Burnelle in Little Rock. On his first visit to that address, he found no one home. He subsequently canvassed the neighborhood and spoke to one of Hunt's neighbors, who indicated that she had spoken to Lakisha once while she was at the residence. Ricard returned to the address a second time, but did not find anyone home. He testified that he left his card and a copy of the subpoena.

Ricard further testified that, following these attempts to locate Lakisha, he received subpoenas on March 13, 2006, for the May trial date.[1] He transmitted a copy of the subpoena to the southwest precinct of the Little Rock Police Department, who agreed to assist him in locating and serving Lakisha. On March 28, Ricard received information that the Little Rock Police Department had made contact with Trena Hunt at the 7909 Burnelle address. Ricard testified that, when officers inquired as to the whereabouts of Lakisha, Trena Hunt told them, "I ain't telling you shit." Ricard said that the police continued to be on the lookout for Lakisha and that he went back to 7909 Burnelle, where he talked to Trena Hunt himself. He said that Hunt denied that Lakisha had ever stayed there and said that she did not know where Lakisha was. Throughout this time, Ricard said that he maintained a current jail-watch notification and returned to 7909 Burnelle at regular intervals, but was unable to locate and serve Lakisha with a subpoena.

Beasley states that, although Ricard made an effort to find Lakisha before trial, he did not begin to try to subpoena her until about a month before the first trial setting. Beasley contends that this delay in trying to subpoena Lakisha was not reasonable and did not meet the standards of good faith that are required. We disagree. Ricard's testimony shows that the State made a good-faith effort to procure the attendance of Lakisha at trial. Accord-

---

[1] The trial was originally set for February 22, 2006; however, it was later continued until May 2, 2006.

ingly, we hold that the circuit court did not abuse its discretion in finding that Lakisha was unavailable pursuant to Ark. R. Evid. 804(a)(5).

Next, we consider whether, pursuant to Ark. R. Evid. 804(b)(1), Beasley had an opportunity and similar motive to develop Lakisha's testimony at the bond-reduction hearing. At the hearing, Beasley elicited testimony from Lakisha that she had lied to police when she previously identified Beasley as the shooter. Lakisha testified that, although Beasley was at the scene, she picked him out of a police lineup as being the shooter because her friend, Lashay Elmore, told her to, not because she saw Beasley shoot Jacko. Lakisha stated that she did not actually see who shot the victim because she was not outside when the shooting occurred. When the State cross-examined Lakisha, she stated that Beasley was at the scene before the crime, but he left just prior to the shooting. Lakisha acknowledged that her testimony at the hearing was inconsistent with the statement that she had given police; however, she stated that she initially lied to police because her friend Lashay had threatened her and she was afraid for her life. After the State concluded its cross-examination, defense counsel was given the opportunity to ask more questions; however, he declined to conduct a redirect examination of Lakisha. Beasley contends that the circuit court erred in admitting Lakisha's testimony from the bond-reduction hearing at trial because he did not have a similar motive to develop Lakisha's testimony at that hearing.

We initially consider what is meant by a similar motive in the two proceedings at issue. Recently, in *Bertrand v. State*, 363 Ark. 422, 425-26, 214 S.W.3d 822, 824 (2005), the court stated:

> In *Proctor v. State*, 349 Ark. 648, 79 S.W.3d 370 (2002), this court retraced its jurisprudence regarding Rule 804(b)(1). We observed that the admission of prior testimony requires both the opportunity to cross-examine the witness and a similar motive to develop his or her testimony. We further noted that we have consistently held that (1) where the prior testimony was at a full-fledged proceeding, (2) where the motive to cross-examine was similar, and (3) where the witness was unavailable, the testimony was admissible under Rule 804(b)(1). *See Proctor v. State, supra.* In *United States v. DiNapoli*, 8 F.3d 909 (2d Cir. 1993), a decision which this court quoted in *Proctor*, the Second Circuit Court of Appeals set out its approach for determining similarity of motive:

The proper approach, therefore, in assessing similarity of motive under Rule 804(b)(1) must consider whether the party resisting the offered testimony at a pending proceeding had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue. The nature of the two proceedings — both what is at stake and the applicable burden of proof — and, to a lesser extent, the cross-examination at the prior proceeding — both what was undertaken and what was available but forgone — will be relevant though not conclusive on the ultimate issue of similarity of motive.

8 F.3d at 914-15. In addition, Jack Weinstein in his celebrated treatise on evidence comments that "[b]ecause similar motive does not mean identical motive, the similar-motive inquiry is inherently factual," and is "narrowly concerned with ensuring the reliability of the evidence admitted at trial." 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 804.04[5] (2d ed. 1997).

This court has not previously addressed the issue of whether a similar motive for cross-examination, or as in this case, redirect examination could be had at both a bond-reduction hearing and a trial. We have recognized a similar motive for cross-examination in cases involving suppression hearings. *See, e.g., Bertrand, supra; Scroggins v. State,* 312 Ark. 106, 848 S.W.2d 400 (1993). We have also concluded that the motive to develop testimony at a federal habeas corpus hearing was sufficient for admission of the testimony at trial, *see Vick, supra,* and that first-trial testimony was admissible in the second trial where the exact issue and motive to cross-examine existed. *See Espinosa v. State,* 317 Ark. 198, 876 S.W.2d 569 (1994). On the other hand, this court found no similar motive to develop testimony at a preliminary hearing and trial, *see Scott v. State,* 272 Ark. 88, 612 S.W.2d 110 (1981), and no similar motive to develop testimony at a bond-revocation proceeding and trial, *see Proctor v. State,* 349 Ark. 648, 79 S.W.3d 370 (2002).[2]

Citing *Proctor, supra,* Beasley contends that a bond-reduction hearing does not involve the same liberty interest as a trial because the standard of proof involved in the hearing is very different, and

---

[2] While the cited cases involved the issue of whether there was a similar motive for cross-examination, Rule 804(b)(1) applies equally to direct examination, cross-examination, and redirect examination.

therefore a bond-reduction hearing is not a "full-fledged" hearing. He argues that, because the bond-reduction hearing was limited, rather than "full-fledged," his counsel did not have a similar motive to develop Lakisha's testimony as he would have at trial. The State contends that Beasley's reliance on *Proctor* is misplaced because the focus of a bond-revocation hearing, which was at issue in *Proctor*, is different from the focus of a bond-reduction hearing, which is at issue in the instant case. In *Proctor*, we stated that "[t]he sole purpose of the [bond-revocation] hearing is for the examining court to determine whether there is reasonable cause to believe that the defendant has committed a felony while out on bail on another charge." 349 Ark. at 667-68, 79 S.W.3d at 382. We agree with the State that the proceeding at issue in *Proctor* is different from the proceeding at issue in the instant case. We now turn to the State's contention that Rule 8.5 of the Arkansas Rules of Criminal Procedure makes it clear that a bond-reduction hearing is an attack on the State's proof; therefore, Beasley had both the opportunity and a similar motive to attack the State's evidence.

Rule 8.5 provides:

Pretrial release inquiry; when conducted; nature of.

(a) A pretrial release inquiry shall be conducted by the judicial officer prior to or at the first appearance of the defendant.

(b) The inquiry should take the form of an assessment of factors relevant to the pretrial release decision, such as:

(i) the defendant's employment status, history and financial condition;

(ii) the nature and extent of his family relationships;

(iii) his past and present residence;

(iv) his character and reputation;

(v) persons who agree to assist him in attending court at the proper times;

(vi) the nature of the current charge and any mitigating or aggravating factors that may bear on the likelihood of conviction and the possible penalty;

(vii) the defendant's prior criminal record, if any, and, if he previously has been released pending trial, whether he appeared as required;

(viii) any facts indicating the possibility of violations of law if the defendant is released without restrictions; and

(ix) any other facts tending to indicate that the defendant has strong ties to the community and is not likely to flee the jurisdiction.

As provided in the rule, the purpose of a bond–reduction hearing is for a judicial officer to conduct an inquiry in the form of an assessment of factors to determine whether the amount of a criminal defendant's bond should be lowered in order to allow a pretrial release. *See* Ark. R. Crim. P. 8.5. We believe that the purpose of the proceeding reveals that a bond–reduction hearing is a limited hearing rather than a "full–fledged" hearing. Contrary to the State's assertion, the purpose of the rule is not solely to attack the State's proof; rather, the judicial officer's inquiry also includes an assessment of the defendant's connection to the community, familial relationships, and history of appearing in court after a pretrial release. *See id.*

Beasley's motive at the bond–reduction hearing was to obtain a pretrial release from jail. While he may have attempted to obtain release by casting doubt on the strength of the State's case, we cannot say that Beasley had "an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue." *See DiNapoli*, 8 F.3d at 914–15. The applicable burden of proof at the hearing, i.e, "the likelihood of conviction," *see* Ark. R. Crim. P. 8.5(vi), and "facts tending to indicate" that the defendant is not a flight risk, *see* Ark. R. Crim. P. 8.5(ix), is far different from Beasley's interest at trial to secure an absolute acquittal. In other words, at trial Beasley had an interest in eliminating *any* likelihood of conviction; whereas, at the bond–reduction hearing, his interest would have been to obtain a pretrial release from jail by showing a *remote* likelihood of conviction. While Beasley had the opportunity to further develop Lakisha's testimony, it is clear to us that he did not have a similar motive to develop her testimony.

Our conclusion that Beasley did not have a similar motive to develop Lakisha's testimony is bolstered by the fact that there was conflicting testimony regarding what the shooter was

wearing. The record reflects that, both in her statement to the police and her testimony at the bond-reduction hearing, Lakisha maintained that the shooter was wearing red. On the other hand, in her statement to the police, Lashay said that the shooter was wearing a white t-shirt; whereas, at trial, she testified that the shooter was wearing a red t-shirt over a white t-shirt. Beasley contends that when Lashay changed her description regarding what the shooter was wearing, it was only then that his decision not to examine Lakisha on redirect at the hearing became important. Beasley states that at the time of the hearing, he could not foretell that Lashay would change her description of what the shooter was wearing or that Lakisha would not be present at the trial to testify. Thus, he argues that he did not have a similar motive to examine Lakisha on redirect as to what Beasley was wearing as he would have after Lashay testified at trial. Beasley's argument is well taken. Based on the foregoing, we hold that the circuit court abused its discretion in admitting into evidence Lakisha's testimony from the bond-reduction hearing. Beasley's second point on appeal regarding the best-evidence rule need not be addressed because Lakisha's prior testimony, either through the certified transcript or the tape-recorded statement, will not be admissible at Beasley's new trial.

Reversed and remanded.

BROWN, J., dissents.

R OBERT L. BROWN, Justice, dissenting. The majority opinion unduly restricts prosecutors on what previous testimony of an unavailable witness can be introduced at trial. For that reason, I respectfully dissent.

At issue here is the testimony of Lakisha Smith, who was either present when the murder of Jermaine Jacko occurred or in the vicinity, depending on which version of her story you believe. Prior to trial, defense counsel called her as his witness at a bond-reduction hearing to determine, in effect, whether defendant Kelvin Beasley was the shooter. The reason for this is that her testimony would impact whether the bond would be reduced and whether Beasley could be released from jail, pending trial. Lakisha Smith had previously told police officers that Beasley was the shooter. However, when called by Beasley's attorney as a witness, she testified that she had lied and that Beasley was not the shooter.

She added that he left the scene before the murder. The prosecutor then cross-examined Smith and emphasized that she had changed her story.

There are several reasons why this testimony, because Smith was unavailable at the time of the trial, was admissible at trial. First, defense counsel clearly had an opportunity to examine Lakisha Smith prior to trial. *See Crawford v. State*, 541 U.S. 36 (2004). In fact, Smith was defense counsel's witness at the bond-reduction hearing and was called to testify that she could not identify Beasley as the shooter.

Secondly, defense counsel had a "similar motive to develop the testimony." Ark. R. Evid. 804(b)(1) (2007). Rule 804(b)(1) reads in full:

> (1) *Former testimony*. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition, taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Thus, the previous testimony might be by *deposition* in another proceeding or part of a *hearing* in a different proceeding under the rule. It need not have occurred in a previous trial. The key point, however, is that there be a similar motive to develop the issue at the prior hearing.

Jack Weinstein makes the point in his treatise, as the majority correctly underscores, that *similar* motive does not mean *identical* motive but rather the inquiry should be directed to the "reliability" of the evidence admitted. Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 804.04[5] (2d ed. 1997). Here, defense counsel called Lakisha Smith as his witness to testify about whether she saw Beasley kill Jacko, and the prosecutor cross-examined her on the credibility of her testimony. The test for reliability was clearly met.

The majority's discussion of a "full-fledged" hearing versus a limited hearing is also off center. A "full-fledged" hearing was first referenced by this court in *Scott v. State*, 272 Ark. 88, 612 S.W.2d 110 (1981), where we held that a preliminary hearing on probable cause to arrest could not be considered full fledged, when

defense counsel, at times, opts not to cross-examine a state witness at these hearings as a matter of strategy. We next discussed a variety of situations where a similar motive to develop testimony did not exist in the case of *Proctor v. State*, 349 Ark. 648, 79 S.W.3d 370 (2002). *Proctor* involved a bond-revocation hearing, which, we pointed out, is not an adversarial hearing under our rules and a hearing where defense counsel need not even appear. We pointed out in *Proctor*, that grand-jury proceedings are not full hearings.

Those situations are markedly different from the facts of this case where defense counsel is the attorney who called Lakisha Smith as his witness to testify that she had misidentified Beasley to police officers as the shooter. The direct and cross-examination of this witness on that point took up eighteen pages of the abstract of testimony. This was not a limited hearing. The emphasis was on whether Lakisha Smith saw the killer — not whether Beasley was a flight risk — and the issue of whether she saw Beasley shoot Jacko was *fully* developed.

The majority also questions whether defense counsel had an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue and cites *United States v. DiNapoli*, 8 F.3d 909 (2d Cir. 1993), as authority. Certainly, a hearing on whether a bond should be reduced so one can get out of jail is not the same thing as a trial for murder. But in both proceedings, the issue of whether Lakisha Smith identified Beasley as the murderer was critically important and it was developed with intensity at the bond-reduction hearing. The majority falls into the trap of focusing on whether the two proceedings are similar rather than on the similar motive to develop the issue at both proceedings.

As a final point, the majority contends that testimony at trial of another witness regarding what Beasley was wearing at the shooting made defense counsel's decision not to do a redirect examination at the prior hearing extremely important. That reasoning is hard to follow. Is what happens at trial the test for deciding whether counsel had a similar motive to develop testimony at a prior hearing? Surely not. If that were the test for "similar motive," prior testimony would rarely, if ever, be admissible at trial. This holding by the majority, should it stand, is unduly strict and will act to hamper all parties in the future wishing to introduce testimony of unavailable witnesses.

I would not disallow Lakisha Smith's testimony for the reasons adduced by the majority.