Cloris Jean ESPINOSA *v.* STATE of Arkansas

CR 93-1060                                      876 S.W.2d 569

Supreme Court of Arkansas
Opinion delivered May 31, 1994

*Austin & Osborne*, by: *Brenda Horn Austin*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Cloris Jean Espinosa was charged and convicted of five counts of delivery of a controlled substance, and received consecutive sentences of ten years on each count. Espinosa's two points for appeal in this case stem from a prior mistrial she previously obtained on these same charges.

At Espinosa's first trial, the state offered four witnesses. In sum, the state offered testimony that, with the employment of a confidential informant, and an undercover police officer, five drug buys had been made involving Ms. Espinosa. Espinosa's defense at trial was based upon her contention that the state had no independent corroborative evidence to prove that any of the alleged drug buys occurred. In fact, Espinosa's counsel stated in opening argument that the state had no fingerprints, drugs, recordings or "marked money" to prove its charges. In making his argument, counsel had relied in part on the fact that the state had provided no such evidence in response to Espinosa's pretrial discovery. The state's first witness, Lieutenant Mike Jones, testified to having participated with other officers and an informant in surveilling Espinosa; he said that no body mike, video surveillance or fingerprints were used or obtained in their investigation of Espinosa. Jones was then asked on cross-examination, "But you don't have anything solid out of those investigations other than drugs and testimony of undercover agents, right?" And Jones responded as follows:

> "That's not correct. I have a one hundred dollar bill that was used in one of the drug purchases that was recovered from a business where drugs had been purchased from Ms. Espinosa.

> Defense counsel: It's not reflected in any of your reports is it?

> Lt. Jones: Yes, sir.

> Defense counsel: I never saw it."

Another officer, Detective Frankie Hart, also testified that a "marked" one hundred dollar bill had been found in a safe in the business where drug purchases had occurred, and using a police report to refresh his memory, he further recalled that marked bill had been used in the officers' investigation of

Espinosa, and had been provided to undercover officer Jim Wilkins.

Following Hart's testimony, Espinosa moved for a mistrial. At a hearing in chambers, the trial judge and respective counsel discussed thoroughly the failure of the state to furnish prior to trial the marked bill and police report testified to by Officers Jones and Hart. Espinosa's counsel ultimately convinced the judge that Espinosa had been prejudiced by the officers' testimonies, since counsel had in opening statement told the jury no marked bills would be introduced by the state.

Although the trial judge granted Espinosa a mistrial and rescheduled another which resulted in her convictions and this appeal, she claims the state was barred from prosecuting her again. Espinosa cites the case of *Oregon* v. *Kennedy*, 456 U.S. 667 (1981) for the proposition that a defendant's retrial is barred under the Double Jeopardy Clause where governmental trial conduct was intended to provoke the defendant into moving for a mistrial. In sum, Espinosa argues that, in her original trial, the state intentionally withheld pretrial discovery information, revealed it for the first time at trial and provoked her into moving for a mistrial. We cannot agree.

First, we point out that the trial judge, who presided at the first trial, conducted a searching inquiry into why the state had failed to provide Espinosa the marked money and police report. The prosecuting attorney responded that the information had been in a police file and had not been given to him until the day of trial and after Officer Jones testified. The judge pointed out that the prosecutor had not offered the disputed evidence, but instead, it was first revealed when the defense cross-examined Jones. The judge announced that he was convinced the state was surprised that the evidence existed, and considering the nature of it, believed the state would have used the evidence in its case-in-chief, if the state had known the evidence was available.

Later, in ruling on Espinosa's motion to bar a retrial, the trial court announced that it had read the record of the first trial, the judge's findings at that trial and reaffirmed that the state had not intentionally withheld the disputed evidence. It further found that all trial strategy concerns of defense counsel at the first trial

had been satisfied by the granting of the mistrial. In the *Kennedy* decision relied on by Espinosa, the Supreme Court held that only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion. *Id.* at p. 676. Espinosa fails to show the trial judges erred in finding and deciding the state did not intentionally or in bad faith violate the discovery rules or intend to goad her into requesting a mistrial.

■ For her second point for reversal, Espinosa contends her right under the Confrontation Clause was violated when the testimony given by an Officer Jim Wilkins at the first trial was allowed to be introduced and read at the second trial. Wilkins died after the mistrial and before Espinosa's second trial. Espinosa claims she was not afforded the opportunity and similar motive to develop Wilkins' testimony by direct, cross, or redirect examination as permitted under Ark. R. Evid. 804(b)(1) which provides as follows:

> (b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

> (1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or in a civil action or proceeding a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Ms. Espinosa contends that because of the mistrial, she did not have the opportunity to develop Wilkins' testimony after Espinosa learned of the state's so-called new evidence revealed by Jones and Hart. Ms. Espinosa reiterates that, at the first trial, the marked one hundred dollar bill was first mentioned during the cross-examination of Lieutenant Jones and then by Hart on direct examination. Hart had testified that Wilkins had been provided the marked bill to purchase drugs from Espinosa. She submits that she declined to question these witnesses further because (1) her

trial counsel assumed that Jones was "wrong" when stating "marked money" had been recovered and (2) her counsel was reluctant to ask questions concerning "an area that [he] was not provided any information on."

■ Ms. Espinosa now argues that, at the second trial, she had derived a new or other motive to develop alternative explanations as to how the marked money got into the safe where the officers had found it. After Officer Jones mentioned the marked money, Espinosa had sufficient reason and motive to cross-examine Wilkins, who also testified about the marked money and police reports before a mistrial was declared. In this connection, we recount that the trial court, after Officers Jones, Wilkins and Hart testified and before a mistrial was declared, called a recess for the express purpose of allowing Espinosa to question any relevant witness about the report and the marked money. In fact, Espinosa's trial counsel conceded that, during the called recess, he was given an opportunity to question Wilkins about everything.

■ In addition, Ms. Espinosa can show no prejudice flowing from her inability to cross-examine Officer Wilkins at her second trial. First of all, Officer Lance King, who was the officer who prepared the disputed police report, was also available for cross-examination during the second trial. Officers King, Jones and Hart were available to answer any questions regarding the making of the report or the circumstances under which the money was found. It is fundamental that we do not reverse for trial error absent a demonstration of prejudice. *Sheridan* v. *State*, 313 Ark. 23, 852 S.W.2d 772 (1993).