Jamel JACKSON v. STATE of Arkansas

CR 95-777

911 S.W.2d 578

Supreme Court of Arkansas
Opinion delivered December 11, 1995

*Brent Baber Law Firm*, by: *Bill Luppen*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Deputy Att'y Gen., Sr. Appellate Advocate for appellee.

TOM GLAZE, Justice. Appellant Jamel Jackson brings this appeal in response to the Pulaski County Circuit Court's denial of his former jeopardy-based motion to dismiss two counts of capital felony murder, a predicate felony charge of aggravated robbery, first- and second-degree battery charges, and a theft charge. The appeal asserts that the state prosecutor engaged ·in misconduct with the intention of goading Jackson into moving for a mistrial. The court denied the motion, and we agree.

On December 17, 1993, Jamel Jackson and co-defendant Shawn Wilson arrived at a residence, No. 17 Dawn Court, in Little Rock, where Grandville Broadway, Alvin Frazier, James Fairchild and Clinton Lewis were present. Fairchild permitted Jackson and Wilson entry into the home. A series of events occurred inside which culminated in the shooting and killing of Broadway and Frazier, and the wounding of Lewis before Lewis escaped out the back door.

Jackson's jury trial was set for September 26, 1994, but by agreement, his trial was reset for February 13, 1995, because of the unavailability of the medical examiner. The state twice more asked for a continuance, without objection, because of Fairchild's and Lewis's unavailability as witnesses.

By the time of the trial on April 5, 1995, Lewis had been located, but Fairchild's whereabouts remained unknown. As a result of Fairchild's absence, the prosecutor moved to nolle pros the second-degree battery and the theft charges, since the state

had intended to use Fairchild's testimony to prove these crimes, as well as the aggravated robbery charge which the state alleged led to Broadway's and Frazier's deaths. With Fairchild being unavailable and Lewis now having been located, the prosecutor moved to amend the information to name Lewis as a victim of the aggravated robbery charge. Defense counsel objected to the state's request to name Lewis, and the trial court sustained his objection, stating the state's request was a material change and untimely.

Because of Fairchild's continued absence and the trial court's ruling that the state could not utilize Lewis to prove its case, the prosecutor decided to prove its case against Jackson by using co-defendant Wilson as a witness. Wilson had previously entered a guilty plea to these crimes. At Jackson's trial, the prosecutor, during opening statement, told the jury that Wilson would testify to matters surrounding the alleged crimes. Defense counsel moved for mistrial, stating Wilson claimed the state had never asked him to be a witness, Wilson had stated he would not be a witness, and in fact, if he was called as a witness, Wilson said he would take the Fifth Amendment. Because Wilson chose not to testify, the trial court determined Jackson had been prejudiced by the prosecutor's opening statement and granted Jackson's mistrial motion. The trial court then reset a new trial date for April 25, 1995.

Because Fairchild was still absent and Wilson refused to testify, the state again amended its information renewing its earlier strategy using Lewis's testimony showing he was a victim of the aggravated robbery which was the predicate felony of the capital murders of Broadway and Frazier. The state also amended its information, restating the second-degree battery and theft charges it had nolle prossed at the April 5 trial.

Jackson objected to the state's newly amended information and moved double jeopardy had attached. Jackson alleged that the state's amended information exemplified the real reason why the state had made its prejudicial remarks during its opening statement at the April 5 trial. In sum, Jackson claims that, at the April 5 trial, the state mentioned it intended to use Wilson to prove its case when the state knew Wilson would not testify, and also knew it could not use Lewis as a witness, as well. Jackson further asserted that because Wilson and Lewis were not available, the state needed

the court to declare a mistrial so as to avoid another continuance, which would have allowed Jackson to be released for jeopardy reasons under the nine-month speedy trial rule.

In *Espinosa* v. *State*, 317 Ark. 198, 876 S.W.2d 569 (1994), this court relied upon *Oregon* v. *Kennedy*, 465 U.S. 667 (1982), which stated the following:

> Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

*Id.* at 676; *Espinosa* v. *State*, 317 Ark. 198, 202, 876 S.W.2d 569, 571 (1994). The Supreme Court further held that the examination of the intent of the prosecutor calls for the court to make a finding of fact by inferring the existence or nonexistence of intent from objective facts and circumstances. *Oregon*, 465 U.S. at 675.

The central issue here is whether the record supports the trial court's finding that the prosecutor acted in good faith when, during opening statement, he proclaimed that the co-defendant Wilson would offer testimony in proving its case against Jackson. We believe the objective facts and circumstances favor the state. At a hearing on this issue, the prosecutor explained that during an interview with Wilson on February 7, 1995, Wilson provided a factual recitation or statement inconsistent with his guilty plea. The prosecutor promptly alerted defense counsel concerning Wilson's inconsistent statement and defense counsel, in turn, joined the prosecutor in further interviewing Wilson. Both the prosecutor and defense counsel quickly had a hearing before the trial court where the prosecutor voiced concern to the judge regarding whether by putting Wilson on the stand to testify consistently as to what he said in the interview, the prosecutor would be suborning perjury, causing a mistrial and double jeopardy to attach.[1] Wilson testified that two months prior to the April 5 trial,

---

[1] The court responded to the prosecutor's concern by stating that he did not think there was any subornation of perjury, but that Wilson's statement would be governed by the rules of evidence as to prior inconsistent statements, and that the point is one to be taken up if and when it arises at trial.

the prosecutor had visited him in jail and asked Wilson if he were called as a witness, what would he testify to. Wilson further admitted that it was possible that it was discussed that he was listed as a witness in Jackson's case. Wilson further related that never, during any conversation with the prosecutor, or anytime prior to the trial, had Wilson indicated to either counsel that he was going to claim his Fifth Amendment rights. The prosecutor asserted that his intent was to put Wilson on the stand for the limited purpose of showing Wilson was with Jackson when the crimes were committed and afterwards the two of them fled the state together. Along with this testimony, the prosecutor intended to utilize Wilson's earlier guilty plea to show Wilson's prior inconsistent statement, and his plea testimony describing the events surrounding the crimes.

The above facts alone support the prosecutor's assertion that he in good faith believed that Wilson would testify as the prosecutor stated during his opening statement at the April 5 trial. In addition, we hold the record also supports the trial judge's determination that the prosecutor had no intention of goading Jackson into moving for a mistrial.

In conclusion, Jackson invites this court to adopt two other state jurisdictions that have adopted a broader standard than that required under *Oregon* v. *Kennedy*. He suggests double jeopardy should attach when prosecutorial conduct is performed with indifference as to whether a mistrial would result. While we doubt the broader standard would benefit Jackson in the circumstances in this case, we reject Jackson's invitation, especially since in our recent decision in *Espinosa* we adopted the standard in the plurality decision of *Oregon* v. *Kennedy*.