2011 Ark. 92

**Billy Dale GREEN, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 10–511.**

Supreme Court of Arkansas.

March 3, 2011.

---

Montgomery, Adams & Wyatt, PLC, by: James W. Wyatt and Dale E. Adams, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Laura Shue, Ass't Att'y Gen., Little Rock, for appellee.

JIM GUNTER, Justice.

Appellant appeals the circuit court's denial of his motion to dismiss the charges against him on double-jeopardy grounds based on prosecutorial misconduct. On appeal, appellant argues that, due to the State's *Brady* violation in his first trial, and the fact that he has already been granted a new trial on other grounds, the only appropriate remedy for this violation is a dismissal of the charges against him. Because this is a subsequent appeal following an appeal that was decided by this court, we have jurisdiction pursuant to Ark. Sup.Ct. R. 1–2(a)(7). We affirm the denial of the motion to dismiss.

In August 2003, appellant was charged with four counts of capital murder for the deaths of Lisa and Carl Elliott and their two children, Felicia and Gregory. Appellant was also charged with kidnapping with regard to Felicia Elliott. In a judgment and commitment order filed May 24, 2004, appellant was found guilty of the above charges and sentenced to death on each

count of capital murder and to life imprisonment on the count of kidnapping. This court reversed appellant's convictions and remanded for a new trial, however, based on the circuit court's error in allowing the State to present reputation and other bad acts evidence. *Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006). After remand, appellant was again charged with four counts of capital murder and one count of kidnapping.

On April 16, 2010, appellant filed a motion to dismiss the charges against him based on prosecutorial misconduct during his previous trial. Specifically, appellant asserted that, during the trial, the State had failed to provide to the defense a statement made by Chad Green, one of the State's primary witnesses and appellant's son. At appellant's trial, Chad testified that his father, appellant, was the person who committed the crimes and that he had only been an observer. But in the statement discovered by the defense, given prior to appellant's trial, Chad confessed that he alone committed the murders and never implicated his father. Appellant argued that this was a clear *Brady* violation and that, as a remedy, the charges against him should be dismissed.

A hearing on this motion was held on April 21, 2010. At the hearing, defense counsel explained that, at appellant's previous trial, Chad testified pursuant to a plea agreement under which he received twenty-years' imprisonment. Then, after the appeal and remand by this court, it was discovered that Chad had also given a statement to his attorney's investigator in February 2004 in which he said that he committed the murders. Appellant was not given a copy of this statement prior to or during the first trial, even though his attorneys sought full discovery from the State. Appellant asserted that having the opportunity to cross-examine Chad regarding the statement would have substantially changed the outcome of appellant's trial.

In response, the deputy prosecuting attorney conceded that the statement should have been provided to the defense and that a *Brady* violation had occurred. But, he argued, the remedy for such a violation is a new trial, which appellant had already been granted, and there was no basis for dismissal on double-jeopardy grounds based on prosecutorial misconduct. Appellant disagreed and argued that there was case law that supported dismissal for prosecutorial misconduct.

After deliberating the issue, the court pronounced from the bench that it was denying the motion to dismiss. After the court's ruling, the prosecuting attorney added that, at the time he received the proffered statement in question, he believed it was "hypothetical testimony in exchange for a possible plea," and that, after determining it did not comport with the previous version of events that Chad had offered, dismissed it as not admissible and "forgot about it." An order denying appellant's motion to dismiss was entered on May 3, 2010, and appellant filed a notice of appeal from this order on May 4, 2010.

This court reviews a circuit court's denial of a motion to dismiss on double-jeopardy grounds de novo. *Winkle v. State*, 366 Ark. 318, 235 S.W.3d 482 (2006). We have further said that "when the analysis presents itself as a mixed question of law and fact, the factual determinations made by the trial court are given due deference and are not reversed unless clearly erroneous." *Id.* at 320, 235 S.W.3d at 483. However, the ultimate decision by the circuit court that the defendant's protection against double jeopardy was not violated is reviewed de novo, with no deference given to the circuit court's determination. *Id.* A double-jeopardy

claim may be raised by interlocutory appeal because if a defendant is illegally tried a second time, the right would have been forfeited. *See Zawodniak v. State*, 339 Ark. 66, 3 S.W.3d 292 (1999).

In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." In the present case, the parties did not dispute that the prosecution's failure to disclose Chad's statement was a *Brady* violation. Thus, the dispute in this case turns on what is the proper remedy for this violation. Appellant acknowledges that, ordinarily, the remedy would be a new trial and cites to this court's recent opinion in *Buckley v. State*, 2010 Ark. 154, 2010 WL 1255763, in which we granted a petition to reinvest jurisdiction in the circuit court to proceed with a writ of error coram nobis based on a possible *Brady* violation. However, because appellant has already been granted a new trial on other grounds, he argues that there is no other remedy for the prosecutorial misconduct in this case other than dismissal.

To support his argument, appellant cites to several cases from other jurisdictions, in particular *Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321 (1992), which presented facts very similar to the case at bar and found that prosecutorial misconduct implicated the double-jeopardy clause of the Pennsylvania Constitution. In *Smith*, the appellant was convicted of three counts of first-degree murder and sentenced to death, but the Pennsylvania Supreme Court reversed his conviction due to the admission of impermissible hearsay testimony and remanded for a new trial. Prior to his retrial, the appellant filed a motion to dismiss the charges based on double jeopardy due to recently-discovered evidence of prosecutorial misconduct during his first trial. The Pennsylvania Supreme Court agreed that the State's actions constituted violations of the rule in *Brady*. The court acknowledged that it had previously held that double jeopardy attached only to those mistrials that have been intentionally caused by prosecutorial misconduct, and that this was the standard decided by the United States Supreme Court under the federal constitution in *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). In *Kennedy*, the Supreme Court held that

> the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.

*Id.* at 679, 102 S.Ct. 2083. However, the Pennsylvania Supreme Court decided that, whatever the result may be under the *Kennedy* standard, their own state constitution barred retrial. Appellant also cites several other states that have similarly held that their state constitutions encompass more protection for the double-jeopardy clause in the context of prosecutorial misconduct than the federal *Kennedy* standard. *See State v. Rogan*, 91 Hawai'i 405, 984 P.2d 1231 (1999); *State v. Breit*, 122 N.M. 655, 930 P.2d 792 (1996); *Pool v. Superior Ct.*, 139 Ariz. 98, 677 P.2d 261 (1984); *State v. Kennedy*, 295 Or. 260, 666 P.2d 1316 (1983).

In response, the State contends that the remedy for the *Brady* violation in this case is a new trial. The State cites *Timmons v. State*, 290 Ark. 121, 717 S.W.2d 208 (1986), in which this court held that double jeopardy did not bar retrial after a mistrial based

on prosecutorial misconduct. In *Timmons*, we declined to follow *United States v. Martin*, 561 F.2d 135, 140 (8th Cir.1977), which held that an indictment should have been dismissed after finding that the prosecutorial misconduct in that case was best described as "prejudicial error undertaken to harass or prejudice the defendant" and constituted "prosecutorial overreaching." The State also cites *Thompson v. State*, 273 Ark. 29, 616 S.W.2d 18 (1981), which affirmed the trial court's determination that double jeopardy did not attach when a defendant requested a mistrial and there was no intentional misconduct on the part of the prosecutor.

The State also argues that this court adopted the *Kennedy* standard in *Espinosa v. State*, 317 Ark. 198, 876 S.W.2d 569 (1994). In *Espinosa*, the appellant cited the *Kennedy* standard and argued that the State had intentionally withheld pretrial discovery information and revealed it for the first time at trial, which provoked her into moving for a mistrial. The trial judge, however, found that the State had not intentionally withheld the disputed evidence, and this court held that Espinosa had failed to show this finding was in error.

Also, in *Jackson v. State*, 322 Ark. 710, 911 S.W.2d 578 (1995), this court held that a second trial was not barred by double jeopardy after a mistrial was granted due to an improper statement by the prosecutor. After the mistrial was declared, the State amended its information, and Jackson objected, arguing that the State had made its prejudicial remark during opening statement because it needed the court to declare a mistrial so as to avoid another continuance, which would have allowed Jackson to be released under the speedy-trial rule. Citing the *Kennedy* standard, this court held that the record supported the trial court's finding that the prosecutor

had acted in good faith and did not intend to provoke a mistrial. We noted that Jackson urged us to adopt a broader standard than that required under the *Kennedy* test, but we declined to do so.

The State asserts that because this court has adopted the *Kennedy* standard, and there was no showing of any bad faith or intent to provoke a mistrial on the part of the prosecutors in this case, double jeopardy does not apply. The State equates this case to a petition for writ of error coram nobis under the assertion that there was material evidence withheld by the prosecutor, and the State argues that if such a writ was granted, the relief would be a new trial.

In reply, appellant argues that the facts of *Oregon v. Kennedy*, as well as most of the Arkansas cases cited by the State, are distinguishable from the case at bar; only *Espinosa* deals with the prosecutor's failure to disclose pretrial discovery information. Appellant also disagrees with the State's contention that he failed to show intentional bad faith on the part of the prosecutors. Appellant argues that the real reason the State did not turn over the proffered statement of Chad Green was because it knew it gave a different version of events, a version in which Chad admitted to committing the murders, and was thus exculpatory evidence. It was also impeachment evidence that called into question the veracity of Chad's testimony at appellant's trial. Appellant contends that the State clearly acted in bad faith by presenting Chad as a key witness, all the while knowing that he had given a statement contrary to his testimony at trial. According to appellant, this was a purposeful and deliberate act that should warrant a bar to a second trial; otherwise, there is no incentive for the State to stop this type of misconduct in the future.

■ Both the Fifth Amendment to the United States Constitution and article 2, § 8 of the Arkansas Constitution require that no person be twice put in jeopardy of life or liberty for the same offense. *Williams v. State*, 371 Ark. 550, 268 S.W.3d 868 (2007). The Double Jeopardy Clause protects criminal defendants from (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Wilcox v. State*, 342 Ark. 388, 39 S.W.3d 434 (2000) (citing *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). The underlying idea behind the Double Jeopardy Clause is that

> the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). The central issue presented to this court in the case at bar is whether, in instances of prosecutorial misconduct, we should afford greater protection under the double-jeopardy clause of our state constitution than that given under the federal constitution. As stated previously, the federal standard, clarified in *Oregon v. Kennedy*, is that a defendant may invoke the bar of double jeopardy only in those cases in which the conduct giving rise to a successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial. We have previously declined to broaden this standard. *See Jackson, supra.* However, it does not appear that this court has previously dealt with this particular set of facts: the grant of a new trial followed by a motion seeking dismissal of the charges based on prosecutorial misconduct during the previous trial.

On the other hand, there are other states that have adopted the *Kennedy* standard and declined to extend its protections in situations such as the case at bar. For example, in *State v. Moore*, 969 So.2d 169 (Ala.Crim.App.2006), the Alabama Court of Criminal Appeals found that a dismissal of charges against the defendant as a sanction for a *Brady* violation was not warranted. In *Moore*, the defendant was convicted of four counts of capital murder and sentenced to death, but was granted a new trial based on *Brady* violations by the prosecution. The defendant then moved to dismiss the indictment, alleging that he could not receive a fair retrial because of the *Brady* violations, and the circuit court granted the motion after finding that the prosecutor's intentional misconduct barred retrial under the double-jeopardy clause. The prosecution in *Moore* had failed to disclose exculpatory evidence to the defense and had even lied to the court about the existence of the evidence. Assuming arguendo that a mistrial and a new trial were functionally equivalent, the Court of Criminal Appeals held that the *Kennedy* test would apply, and that

> [t]here is no indication that the prosecutor's actions here were intended to provoke a mistrial. Indeed, it is apparent that the opposite is true. "The prosecutor's withholding of exculpatory evidence from the defendant may only be characterized as an overzealous effort to gain a conviction from the first jury and not as an attempt to subvert [the defendant's] 'valued right' by bringing the case before a second jury." *United States v. Coleman*, 862 F.2d 455, 458 (3d Cir. 1988). "[W]e do not believe the [Double Jeopardy Clause] may be invoked to

supplement the remedies contemplated by *Brady*." 862 F.2d at 458.

*Moore*, 969 So.2d at 180–81.

Also, in *State v. Barton*, 240 S.W.3d 693 (Mo.2007), the defendant was granted a new trial post-conviction and argued that double jeopardy should preclude retrial of his case because of prosecutorial misconduct in his previous trial. The new trial was granted based on the prosecutor's failure to disclose information relating to a witness's criminal history and failure to correct perjured testimony by the witness. After remand, the defendant filed a motion to dismiss on double-jeopardy grounds, which was denied. On appeal, the Missouri Supreme Court explained: "Appellant now asks this Court to extend *Oregon v. Kennedy* to preclude a retrial even in the absence of a mistrial, arguing that it should make no difference that prosecutorial misconduct that would have resulted in a mistrial was not discovered until after trial." *Id.* at 701. However, the Court held that, even if such an extension was granted, the defendant must still show that the misconduct of the prosecutor was undertaken "not simply to prevent an acquittal, but to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct." *Id.* at 702 (quoting *United States v. Wallach*, 979 F.2d 912, 916 (2nd Cir.1992)). The Court found that the defendant had failed to show that the prosecutor intended to prevent an acquittal and, thus, the retrial of the case was not barred by double jeopardy.

Likewise, in *State v. Morton*, 283 Kan. 464, 153 P.3d 532 (2007), the Kansas Supreme Court held that prosecutorial conduct was not a bar to retrial and explained that *"Kennedy* requires something more than misconduct, even intentional and reversible misconduct, in order to bar retrial. It requires that the prosecutor intended to provoke a mistrial, to goad a defendant into sacrificing his or her choice to live with the outcome from the first jury." *Id.* at 538–39. *Morton* also cites another Kansas Supreme Court case, *State v. Williams*, which explained:

> The constitutional interest protected by *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), is the right of a defendant to freely choose whether he or she should request a mistrial. Where the prosecutor seeks to force the defendant into a choice, the choice is not freely made and the prosecution has subverted the defendant's rights protected by the Double Jeopardy Clause. The exception applies and double jeopardy precludes the State from trying the defendant again on the same charges. *State v. McClanahan*, 259 Kan. 86, Syl. ¶ 3, 910 P.2d 193 (1996).
>
> Prosecutorial misconduct that precludes further prosecution requires intent by the prosecutor to provoke the defendant into moving for a mistrial. Intentional prosecutorial conduct motivated by a desire to obtain a conviction and not by a desire to provoke the defendant into moving for a mistrial may be grounds for a mistrial but it does not preclude retrial of the case. *State v. Muck*, 262 Kan. 459, 467, 939 P.2d 896 (1997).

268 Kan. 1, 988 P.2d 722, 727–28 (1999); *see also U.S. v. Lewis*, 368 F.3d 1102 (9th Cir.2004) (holding that government's alleged *Brady* violations at first trial did not constitute double jeopardy bar to retrial); *State v. Butler*, 262 Conn. 167, 810 A.2d 791 (2002) (affirming denial of motion to dismiss charges under the *Kennedy* standard).

 We agree with the reasoning presented above and decline to extend the holding of *Kennedy* beyond those instances in which the prosecution has intentional-

ly provoked a mistrial. Our law is well settled that the remedy for a *Brady* violation is a new trial. *See Cloird* v. *State*, 349 Ark. 33, 76 S.W.3d 813 (2002); *Larimore v. State*, 327 Ark. 271, 938 S.W.2d 818 (1997). Appellant has received a new trial and thus has received the relief to which he is entitled. Therefore, the circuit court did not err in denying appellant's motion to dismiss. We also note that, while appellant asks this court to follow other states that have expanded their double-jeopardy protections in this context, appellant has failed to articulate an argument based on this state's double-jeopardy jurisprudence and does not even cite to the Arkansas Constitution in his argument.

Finally, we note that there was disagreement between the parties over whether the prosecution acted intentionally or the non-disclosure was inadvertent, or in the words of the State, a "slip-up." We refer this matter to the Committee on Professional Conduct to determine whether any disciplinary action is warranted.

Affirmed.

BROWN and BAKER, JJ., concur in part and dissent in part.

DANIELSON, J., dissents.

ROBERT L. BROWN, Justice, concurring in part and dissenting in part.

I agree with every part of the majority opinion except for the referral of the prosecutor's conduct to the Professional Conduct Committee to "determine whether any disciplinary action is warranted" without an explanation as to why this is being done.

The prosecutor's lapse in this case in not turning the second statement of Chad Green over to counsel for Billy Dale Green was very serious. For that reason, Billy Dale Green has been awarded a new trial as the remedy for this *Brady* viola-tion. *Brady* violations occur whether the prosecutor's conduct in failing to disclose evidence is inadvertent or intentional. *Newman v. State*, 2009 Ark. 539, at 13, 354 S.W.3d 61, 69.

The prosecutor admitted that his failure to disclose was a *Brady* violation but then said "as an officer of the Court" that the failure was "a slip up" and "inadvertent" and was not intentional. The trial judge then found that he did not believe the prosecutor "hid the evidence."

Later, a second prosecutor told the judge that when he read the second Chad Green statement, "it did not comport with his previous versions of the case" and was not helpful to the prosecution of Billy Dale Green. The prosecutor said once the proffer was made by Chad Green's attorney, he "simply forgot about it" and "it went out of my mind." The trial judge then repeated that Billy Dale Green's motion to dismiss was denied.

Rule 3.8 of the Arkansas Rules of Professional Conduct provides as a special responsibility that prosecutors should make a timely disclosure to the defense of all evidence that tends to negate guilt. That encapsulates the *Brady* obligation. What is unclear about today's opinion, however, is whether the majority is referring this matter to the Professional Conduct Committee for discipline due to an *intentional* hiding of evidence or because of an inadvertent failure to disclose, which equates more to negligence. The trial judge in the instant case, of course, found the prosecutor's conduct was not an intentional hiding. And there is no suggestion in today's decision that the judge's finding was clearly erroneous. *See,* *e.g.,* *Henderson v. State*, 349 Ark. 701, 708, 80 S.W.3d 374, 378 (2002) ("A trial court's factual determination on a motion for a

new trial will not be reversed unless clearly erroneous.").

Comment 1 to Rule 3.8 provides, in part:

A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence. Precisely how far the prosecutor is required to go in this direction is a matter of debate and varies in different jurisdictions. Many jurisdictions have adopted the ABA Standards of Criminal Justice Relating to the Prosecution Function, which in turn are the product of prolonged and careful deliberation by lawyers experienced in both criminal prosecution and defense.

The ABA Standard of Criminal Justice Relating to the Prosecution Function 3–3.11 provides:

A prosecutor should not *intentionally* fail to make timely disclosure to the defense, at the earliest feasible opportunity, of the existence of all evidence or information which tends to negate the guilt of the accused or mitigate the offense charged or which would tend to reduce the punishment of the accused.

(Emphasis added.)

In analyzing Colorado Rule of Professional Conduct 3.8, which contains the same language as our Rule 3.8 and has the same commentary, the Colorado Supreme Court concluded that intentional conduct of the prosecutor was required:

Because we do not wish to interfere with the discretion of trial courts to handle discovery disputes in the way dictated by the facts of the case, and because we do not wish the possibility of a grievance proceeding to permeate every discovery dispute in criminal cases, we choose to read the rule itself as including the mens rea of intent.

*In re Attorney C,* 47 P.3d 1167, 1174 (Colo. 2002).

The majority's opinion opens the door to referrals to the Committee for disciplinary action even for unintentional mistakes made by prosecutors during investigations. If the majority is referring the two prosecutors in this case to the Committee for negligence, will this court, henceforth, be referring all prosecutors involved in *Brady* violations to the Committee for discipline, even when the conduct equates only to negligence?

I dissent on this single point because it is an important one. Referring conduct to the Committee is a serious matter. The point needs to be clarified.

BAKER, J., joins this opinion.

PAUL E. DANIELSON, Justice, dissenting.

Because I would reverse the denial of Green's motion to dismiss, I respectfully dissent. I am more persuaded by those decisions relied upon by Green wherein the state constitutions provided expanded relief for a *Brady* violation.[1] More specifically, I agree wholeheartedly with the Pennsylvania Supreme Court, which observed:

granting heightened relief under their respective state constitutions, but more importantly, it is clear that this court could only grant Green "more protection under state law, but that we could not do so under the federal constitution." *State v. Sullivan,* 348 Ark. 647, 649, 74 S.W.3d 215, 217 (2002).

---

1. While the majority is correct that Green failed to cite to the Arkansas Constitution in his argument, it is clear to me from his pleadings and arguments to the circuit court, as well as to this court, that he could only be seeking relief under our state constitution. He solely relied on decisions from other states

We now hold that the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial. Because the prosecutor's conduct in this case was intended to prejudice the defendant and thereby deny him a fair trial, appellant must be discharged on the grounds that his double jeopardy rights, as guaranteed by the Pennsylvania Constitution, would be violated by conducting a second trial.

*Commonwealth v. Smith,* 532 Pa. 177, 186, 615 A.2d 321, 325 (1992). I would adopt the reasoning of the ⌊16Pennsylvania Supreme Court and hold that the Arkansas constitution provides expanded relief for an egregious *Brady* violation, the likes of which is currently before us.

Here, even if one were to actually believe that the prosecutors did not intentionally hide Chad's statement from Green's counsel, it is clear that the prosecutors intentionally allowed Chad to testify to a version of events that they knew contradicted a prior statement made by him. At the absolute least, their acts prevented Green from a possible acquittal. For this, the sole remedy, I believe, would be a dismissal of the charges. Accordingly, I would reverse the circuit court's denial of Green's motion to dismiss.