Cite as 2025 Ark. App. 473

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CR-24-700

|  |  |
|---|---|
| JOHN WOMACK | Opinion Delivered October 8, 2025 |
| APPELLANT | |
| | APPEAL FROM THE MARION COUNTY CIRCUIT COURT |
| V. | [NO. 45CR-22-136] |
| STATE OF ARKANSAS | HONORABLE JOHN R. PUTMAN, |
| APPELLEE | JUDGE |
| | AFFIRMED |

**CINDY GRACE THYER, Judge**

The State charged appellant John Womack as a habitual offender with multiple felony offenses. During the course of Womack's jury trial in the Marion County Circuit Court, Womack sought a mistrial, which the court granted. When the case was reset for trial, Womack moved to dismiss, asserting that the Double Jeopardy Clause barred his retrial. The circuit court denied his motion, and Womack has now brought this interlocutory appeal assigning error to the court's decision. We find no error and affirm.

## I. *Factual and Procedural Background*

Womack was charged on October 13, 2022, with one count of aggravated robbery, possession of a firearm by certain persons, five counts of aggravated assault, resisting arrest, disorderly conduct, and public intoxication. On October 27, Womack filed a motion for discovery, requesting that the prosecuting attorney furnish him with, among other things,

the names and addresses of persons the State intended to call as witnesses. The State emailed Womack thirteen pages of discovery on November 7.

Before Womack's trial almost a year later, the State issued subpoenas to Charlene Ply, John Spence, Heith Hogan, Jake Kelley, and Jerry Atwell on October 30, 2023. The subpoenas for Spence, Hogan, and Kelley were served on November 2. Atwell's subpoena was not served. Also on November 2, Womack filed a motion in limine to exclude undisclosed evidence. In this motion, he acknowledged that the State had provided some discovery, but it remained "unknown to the defense at this time whether the State possesses further evidence or documents in this case which it: (a) has failed to disclose to the defense in a timely fashion; and (b) intends to use at trial." Womack asked the court to enter an order barring the State from using or referring to any such evidence at trial.

Womack's jury trial then began on November 6.[1] Ply, the State's first witness, testified that she called 911 on October 2, 2022, because Womack was at her home "acting crazy, waving around a gun" and threatening her and her boyfriend, Atwell, over a chainsaw that Womack had loaned Atwell.

Officers Heith Hogan and John Spence were dispatched in response to Ply's call. When they arrived, followed closely by Deputy Jake Kelley, they found Womack and Rebecca McCutcheon standing next to a white car. Both officers pointed their firearms at Womack and McCutcheon and told them to put their hands in the air. McCutcheon complied, but

---

[1]An August 31, 2023 order continued the case to January 16, 2024. The record does not reveal when the case was moved up to November 6, 2023.

Womack became very agitated and started yelling. Womack began advancing on the officers, ignoring multiple instructions to stop. Womack had his hands behind his back, and Spence was afraid he was going to pull a weapon at any time. Spence deployed his taser, which had no effect. Womack continued to advance and pulled out a sharp object. In a state of being "very excited, to the extreme," he told the officers that he was not going to comply with their orders. The officers were eventually able to get Womack on the ground and in handcuffs. A search of Womack's car revealed a pistol in a backpack, and a 9mm shell casing was recovered from Ply's yard.

After Ply and the three officers testified, the court asked the State if it had any other witnesses. The State informed the court that it had some "housekeeping matters to take up," at which time the jury was excused from the courtroom. The State then explained that it had been trying to locate Atwell for a week. Because Atwell, who was anticipated to be the last witness, had still not been located, the State asked the court if the trial could pick up again the next morning. Womack objected, arguing that if the State did not have Atwell under subpoena, it should have asked for a continuance to obtain the his presence. The State responded that a subpoena had been issued for Atwell, but he had not been served. It believed he was in "one of two places." The State added that an employee of the prosecutor's office had spoken with both Atwell and his mother, so it did not believe there would be an issue with getting him served. The State speculated that Atwell was reluctant to come to court because he had a misdemeanor warrant. Womack again argued that the State should have sought a continuance, but the court replied that it did not "see it in the nature of a

3

continuance. I just see it as whether we go forward into the evening or come back in the morning." The court added that if the issue had arisen "in the middle of the afternoon it would be different, but this is the end of the day." The court then recessed the trial for the evening at 4:35 p.m.

The next morning, Atwell appeared and was served with a subpoena. Both the State and the defense were afforded some time to speak with him before the trial recommenced. Atwell then testified for the State. He said that on the day of the incident, Womack and McCutcheon had come over to get a bar and chain for a chainsaw. When they arrived, Atwell told them that he did not have the right parts. Atwell then said, "But then they were asking me if I could get them some crystal meth. And when I told them, no, that I couldn't do that, he--I guess it kind of made him mad, pissed him off. And he had been drinking . . . and he just started, you know, saying, 'Eliminate the ones who owe you.'" Atwell tried to calm Womack down, but Womack went to his car, got a gun, and began waving it around. Atwell asked Womack to leave them in peace, but "he didn't want to have that 'cause I couldn't get any drugs for him."

Soon thereafter, defense counsel approached the bench and objected to Atwell's testimony, arguing that he was attributing statements to Womack that had not been disclosed by the State in discovery. Although the State claimed some of Atwell's statements were on a body-cam video that had been turned over, counsel said there was nothing on the video about Womack asking for drugs. The court asked the State if all of Atwell's statements had been turned over, and the prosecutor replied that "[t]he only thing that they don't have

4

that I wasn't aware of until it just came out of his mouth is about him going over to buy drugs."

The court asked Atwell if he had ever told the investigating officers about what he had just testified to. Atwell replied that he had not because he did not want to incriminate himself. Womack then inquired if he had spoken to the prosecutor before that morning. Atwell said that he had not and that he had only met the prosecutor that day.

Womack then asked to exclude Atwell as a witness. The court said it was not inclined to exclude him, but would "probably grant a motion for mistrial." Although Womack initially declined to move for a mistrial, he eventually moved for one, which the court granted, explaining to the jury that there had been "a lot of evidentiary problems in this case and problems regarding discovery." Womack then asked the court to make a finding that he had been goaded into asking for a mistrial; the court took the question under advisement but did not make a ruling on Womack's request at that time.

Womack's charges were reset for trial on January 16, 2024. On January 15, Womack moved to dismiss the case on double-jeopardy grounds, arguing that the State's "bad faith discovery violation" goaded his attorney into requesting a mistrial. The circuit court held a hearing on Womack's dismissal motion on February 7, 2024. Womack argued that the State "did a poor job of investigating, a poor job of turning over discovery. And at some point during the trial decided they could scuttle that one and get a new trial. . . . And I think that's goading."

Testimony presented at the hearing revealed that the Marion County Sheriff's Office had experienced "a multitude of issues" with obtaining discovery from other agencies and, more specifically, with timely providing discovery in Womack's case. Sergeant Zeb Gilley acknowledged that his office had had issues with the flow of paperwork and obtaining and delivering video evidence. He added, however, that he and his chief deputy had been taking aggressive steps to remedy the situation and that the prosecuting attorney's office now had direct access to the sheriff's department's reporting system. Gilley said he did not believe that any of the discovery issues were intentional on the part of the sheriff's office.

The court orally denied Womack's motion to dismiss on May 29. After Womack sought a written order to enable him to pursue an appeal, the court entered an order on September 3 formally denying his motion. The court found that under Arkansas law, discovery violations did not rise to the level of conduct that would bar a second trial on double-jeopardy grounds. The court ruled that "[w]hat Womack sees as evidence of goading is actually a failure to comply with pretrial procedure and inadequate preparation for trial by the State. . . . The court finds the deputy prosecutor did not intend to 'goad' or provoke the defense into moving for a mistrial." Womack filed a timely notice of appeal from this order.

II. *Standard of Review*

A double-jeopardy claim may be raised by interlocutory appeal because if a defendant is illegally tried a second time, the right is forfeited. *Watson v. State*, 2025 Ark. App. 295. We review a circuit court's denial of a motion to dismiss on double-jeopardy grounds de novo. *Id.* When the analysis presents itself as a mixed question of law and fact, we give the factual

determinations made by the circuit court due deference and will not reverse them unless clearly erroneous. *Id.* However, the ultimate decision by the circuit court that the defendant's protection against double jeopardy was not violated is reviewed de novo, with no deference given to the circuit court's determination. *Id.*

III. *Discussion*

The Fifth Amendment to the United States Constitution and article 2, section 8 of the Arkansas Constitution require that no person be twice put in jeopardy of life or liberty for the same offense. The Double Jeopardy Clause protects criminal defendants from (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Kirkland v. State*, 2018 Ark. App. 396, 557 S.W.3d 270.

> As a part of this protection against multiple prosecutions, the Double Jeopardy Clause affords a criminal defendant a "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter*, 336 U.S. 684, 689 (1949). The Double Jeopardy Clause, however, does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding. *United States v. Jorn*, 400 U.S. 470, 483–484 (1971) (plurality opinion); *Wade*, 336 U.S., at 689. If the law were otherwise, "the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again." *Ibid.*

*Oregon v. Kennedy*, 456 U.S. 667, 671–72 (1982).

The *Kennedy* court held that when a mistrial is granted *over the objection of the defendant*, the test for lifting the double-jeopardy bar is whether the mistrial was a "manifest necessity."

7

*Id.* at 672.[2] When a mistrial is declared *at the request of the defendant*, however, the defendant has elected to terminate the proceedings against himself, and the "manifest necessity" standard is not applicable. *Id.*

*Kennedy* nonetheless established a narrow exception to the rule that double jeopardy will not bar retrial when the defendant moves for a mistrial: "Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Id.* at 676. The Court further explained, "Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *Id.* at 675–76.

Our supreme court restated this rule in *Green v. State*, 2011 Ark. 92, at 9, 380 S.W.3d 368, 373, holding that "a defendant may invoke the bar of double jeopardy only in those cases in which the conduct giving rise to a successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." The examination of the prosecutor's intent calls for the circuit court to make a finding of fact by inferring the existence or

---

[2]*See also* Ark. Code Ann. § 5-1-112(3) (Repl. 2024) ("A former prosecution is an affirmative defense to a subsequent prosecution for the same offense under . . . the following circumstance[ ]: The former prosecution was terminated *without the express or implied consent of the defendant* after the jury was sworn or, if trial was before the court, after the first witness was sworn, unless the termination was justified by overruling necessity." (Emphasis added.)).

nonexistence of intent from objective facts and circumstances. *McClendon v. State*, 2017 Ark. App. 295, at 6, 523 S.W.3d 374, 377.

On appeal, Womack argues, as he did before the circuit court, that he was "goaded" into moving for a mistrial because of the State's discovery violations, its delay in obtaining Atwell's presence at trial, and its failure to disclose the contents of Atwell's statements. The circuit court, however, made a factual determination that "[w]hat Womack sees as evidence of goading is actually a failure to comply with pretrial procedure and inadequate preparation for trial by the State." As noted above, our standard of review requires us to afford due deference to the factual determinations made by the circuit court. We therefore cannot say, in light of the circuit court's observation of the entire trial and its familiarity with the conduct of the parties therein, that the court clearly erred in finding that the prosecutor lacked the requisite intent to goad Womack into moving for a mistrial.

Womack acknowledges that our supreme court has rejected arguments that misconduct by the State or discovery violations alone will not preclude retrial. He nonetheless asserts--without citation to authority--that the Arkansas Constitution gives greater protection as it relates to mistrials and double jeopardy. He also asks that we view his double-jeopardy arguments "in the context of manifest necessity."

We disagree. As this court noted in *Shock v. State*, 2020 Ark. App. 165, 596 S.W.3d 580, our supreme court has repeatedly declined to extend the holding of *Kennedy* beyond those instances in which the prosecution has intentionally provoked a mistrial. *See, e.g.,* *Green*, *supra*; *Jackson v. State*, 322 Ark. 710, 911 S.W.2d 578 (1995). Under *Kennedy* and our

own cases interpreting and applying *Kennedy*, it is clear that in the absence of intentional provocation by the State, a defendant who successfully moves for a mistrial is subject to retrial.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*Sharon Kiel*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.