2012 Ark. App. 499
**Bobby Harold COX III, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 12–48.**

Court of Appeals of Arkansas.

Sept. 19, 2012.

John Wesley Hall, Little Rock and Lisa G. Douglas, for appellant.

Dustin McDaniel, Att'y Gen., by: Brad Newman, Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge.

Appellant Bobby Harold Cox III appeals an October 24, 2011, order of the Lonoke County Circuit Court denying his motion to dismiss criminal charges. Mr. Cox argued in his motion to dismiss, and now argues on appeal, that the criminal action against him was barred by double jeopardy as a result of serious prosecutorial misconduct resulting in a mistrial in a previous jury trial held on June 22, 2011. Our supreme court has long recognized the right to an immediate interlocutory appeal from the denial of a motion to dismiss on double-jeopardy grounds. *See Dilday v. State,* 369 Ark. 1, 250 S.W.3d 217 (2007). We affirm the order of the trial court.

This case was initiated on November 10, 2010, when Mr. Cox was charged with second-degree sexual assault. The State alleged that on April 11, 2010, Mr. Cox engaged in sexual contact with a twelve-year-old girl, M.W. Mr. Cox subsequently filed a motion in limine asking the trial court to prohibit any reference to prior allegations of sexual abuse against another, unidentified girl. This motion was filed in response to the incident report in the instant matter, which contained an allegation by M.W.'s mother that Mr. Cox's grandmother had "called someone and made a complaint about Bobby messing

with a fifteen-year-old girl, but it was dropped."

A pretrial hearing on Mr. Cox's motion in limine was held on June 20, 2011. At the hearing, Mr. Cox asserted that he never knew about the prior complaint involving the fifteen-year-old girl, and that the case was dropped after the first interview with the witness. Mr. Cox argued, "[b]ut it's in a report, which means somebody told a police officer that, and I don't want the police officer testifying or the person who gave it to the police officer testifying there was a prior allegation when it never got anywhere." The State did not resist Mr. Cox's motion, stating that it "never filed a 404(b) notice, and we do not intend to call the victim or any officers in that matter." The trial court granted Mr. Cox's motion in limine, prohibiting any reference to the prior allegation of sexual abuse.

A jury trial was held on June 22, 2011. The testimony established that in April 2010 M.W. lived with her parents and siblings in the same neighborhood as Mr. Cox. Mr. Cox lived with his girlfriend and a male roommate. M.W. and her family were friends with Mr. Cox and saw him on a regular basis.

M.W. testified that on a couple of previous occasions Mr. Cox had made her uncomfortable by touching her leg and her butt, and by trying to kiss her. He also told her "you make me horny," and that if she were old enough he'd "do" her.

The alleged sexual assault occurred one morning after M.W. and her younger sister had missed the school bus, and they went to Mr. Cox's house because their parents had already gone to work. According to M.W., Mr. Cox had offered to take them to school and she was upstairs in his roommate's room getting ready. M.W. testified that Mr. Cox came in, pushed her on the bed, and started kissing and touching her. M.W. stated that Mr. Cox touched her chest and put his hand up her skirt and touched her vagina. M.W. resisted and then tried to leave the room, but Mr. Cox would not let her leave and he exposed his penis. After that they went downstairs and Mr. Cox pushed M.W. up against the wall with his hand on her throat and threatened to kill her if she did not kiss him. M.W. testified that she was afraid to tell anyone about the assault, and that she only told her sister and a couple of friends. About a month later, M.W.'s sister told their mother about the incident.

M.W.'s mother, Heather, testified that after receiving this information from M.W.'s sister, she spoke with M.W. and her husband about it. It was Mother's Day, and Mr. Cox was at his grandmother's house for a barbecue. Heather went there and confronted Mr. Cox about the allegations, and according to Heather, Mr. Cox apologized and said they had kissed a couple of times.

Heather testified that Mr. Cox followed her to her neighbor George Hamby's house, where M.W.'s father, Kenneth, was also present. Heather stated that Mr. Cox "got out of his truck and was crying and stuff and said that he came to apologize for what he had done and don't hit him in the nose, and they got into a fight." Heather then called the police and reported the allegations.

Kenneth testified that when Mr. Cox arrived at George's house, Mr. Cox kept screaming, "I'm sorry for what I done," and said, "just don't hit me in the nose." George corroborated the fact that Mr. Cox apologized repeatedly and said, "I won't do it again." Kenneth then struck Mr. Cox multiple times. Kenneth testified that Mr. Cox's grandfather showed up and reached for his gun, and Kenneth said, "let him tell you what he done to my twelve-year-old

baby." According to Kenneth, Mr. Cox said, "I'm so sorry pop," and his grandfather responded, "you done f'd up now," and they left. On cross-examination, Kenneth acknowledged that Mr. Cox had loaned him money in the past to buy methamphetamine and that the two men had smoked methamphetamine together.

Mr. Cox put on defense witnesses who testified that M.W. was frequently hanging on Mr. Cox and jumping in his lap. In addition, M.W. had allegedly written "I love BJ (Mr. Cox)" in her school binder, and this was also written on the walls of her house. Mr. Cox's girlfriend testified that she was with him constantly to make sure he was not smoking methamphetamine, and that he could never have been alone with M.W. Mr. Cox's grandfather denied that there had been any admission of wrongdoing or apology from Mr. Cox, and he maintained that Mr. Cox was innocent.

Mr. Cox testified on his own behalf, and he stated that he had given M.W.'s family a fair amount of money and that Kenneth would buy methamphetamine for them to smoke. However, he said that before his altercation with Kenneth he had "quit hanging out with them" and was giving them no more money. He indicated that on the day of the fight he was going to George's house to buy methamphetamine, and he thought that Kenneth was trying to rob him. He said that he never apologized to Kenneth for anything.

Mr. Cox stated that M.W. would sometimes jump in his lap, and that he told her to stop. He recalled taking M.W. to school on April 11, 2010, but he denied doing anything inappropriate. Mr. Cox maintained that he never touched M.W. inappropriately or talked to her in the manner she said, and that she was not telling the truth. Direct examination of Mr. Cox concluded as follows:

Q: Now, you're accused of sexual contact with a—against by forcible compulsion with somebody under fourteen—

A: Uh-huh.

Q: —and you're over eighteen.

A: Yes, sir.

Q: Did you commit that crime?

A: No, sir. No, sir.

Q: Did you ever touch M.W. inappropriately?

A: No, sir.

Q: Did you ever—when she jumped on you when you were playing basketball, that's her touching you, correct?

A: Yes, sir.

Q: Did you ever touch her at all?

A: No, sir. I mean, to block her shot or do something like that, yeah.

Q: But not—no other touching.

A: Not no sexual touching, no sir, never did.

During the State's cross-examination, Mr. Cox testified that M.W. flirted with him and "pretty much came on" to him. He also testified that "kids come on to you." The State pursued Mr. Cox's assertion about kids flirting and had the following exchange:

Q: You said, "Kids flirt with you. Don't you know how they do that?" That's what you just testified to.

A: Yeah, yeah.

Q: Can you elaborate on that statement?

A: Can I elaborate on it?

Q: Yes. Can you tell the court a little bit more about—and the jury about—a bit more about what you meant by that?

A: Like saying, "You're pretty," or "you're hot," or whatever.

Q: Okay. Other kids.

A: Yeah.

Q: And how would you characterize a kid? How old would that be?

A: I don't know. Twelve, thirteen, fourteen—

Q: Okay.

A: —fifteen, sixteen.

Q: All right. And another kid accused you of doing the same thing you did to M.W.

A: What kid?

Q: You were just asked—defense just asked—

At that point Mr. Cox's counsel objected and moved for a mistrial on the grounds that the State had violated the trial court's in limine ruling by making reference to the prior allegation of sexual abuse.

In response to Mr. Cox's motion for mistrial, the State argued that the defense had opened the door to the issue during its direct examination of Mr. Cox. Mr. Cox's counsel responded that he had not opened the door because he never asked Mr. Cox whether he had been accused before. In order to resolve the controversy, the trial court excused the jury and listened to the recording of Mr. Cox's direct examination. After listening to the recording and arguments of counsel, the trial court granted Mr. Cox's motion for mistrial, stating:

> Based on the previous rulings of this court, the court had granted the defendant's motion in limine regarding any questions regarding any prior investigations or allegations against the defendant. I had granted that motion in limine. In hearing the transcript, and I believe even the State has acknowledged that they were of a misunderstanding as to what all had come out on direct, I do not see on direct that the door was opened by the defense for the State then to ask about any previous allegations or investigations against the defendant.

Therefore, this court is going to grant a mistrial in this matter.

On August 8, 2011, the trial court reset the case for a pretrial hearing on October 24, 2011, and a jury trial on October 27, 2011. On October 11, 2011, Mr. Cox filed a motion to dismiss on grounds of double jeopardy due to serious prosecutorial misconduct causing the mistrial. The trial court addressed Mr. Cox's motion to dismiss at the pretrial hearing held on October 24, 2011, and concluded that the objectionable question asked by the prosecutor at the first jury trial did not amount to intentional misconduct. On the same day, the trial court entered an order denying Mr. Cox's motion to dismiss.

■ In this interlocutory appeal, Mr. Cox argues that his motion to dismiss was erroneously denied and that retrial should be barred by double jeopardy for willful prosecutorial misconduct. He contends that the question by the prosecutor of prior sexual involvement with a minor was grossly prejudicial and unconscionably inappropriate given that there was no good-faith basis for asking the question and that the evidence was previously ruled inadmissible by agreement of the parties. Mr. Cox submits that the prosecutor in the present case violated the following standards announced by the United States Supreme Court in *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935):

> The prosecuting attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that

guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

Mr. Cox also relies on *Ford v. State*, 4 Ark.App. 135, 140, 628 S.W.2d 340, 343 (1982), where we said that prosecutors have the duty to seek justice and not merely to convict, as well as Rule 3.4(e) of the Arkansas Rules of Professional Conduct, which provides that a lawyer in trial shall not allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by the evidence.

The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be put twice in jeopardy of life and limb." Article 2, section 8 of the Arkansas Constitution provides that "no person, for the same offense, shall be twice put in jeopardy of life or liberty." Mr. Cox argues in this appeal that due to the prosecutor's egregious conduct resulting in a mistrial, a retrial would violate both the federal and state prohibitions against double jeopardy.

In *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), the Supreme Court stated that, although there is ordinarily no double-jeopardy bar to retrial when the defendant requests the termination of his first trial, there is a narrow exception that will bar retrial. The Supreme Court held that the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial. *Id.* at 679, 102 S.Ct. 2083. In other words, only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first trial on his own motion. *Id.* at 676, 102 S.Ct. 2083. Prosecutorial conduct that might be viewed as harassment or overreaching, even if it is sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. *Id.* at 675–76, 102 S.Ct. 2083.

Mr. Cox argues that under the standards set by the Supreme Court in *Oregon v. Kennedy, supra,* the bar of double jeopardy applies in this case because the prosecutor intentionally asked a prohibited and inflammatory question calculated to result in a mistrial. Mr. Cox posits that to hold otherwise would reward the prosecutor by destroying a trial going badly for the State and giving the State a second chance.

Alternatively, Mr. Cox asserts that the Arkansas Constitution is subject to a different construction than the United States Constitution. Citing cases from other jurisdictions, he asks this court to reject the standard set forth in *Oregon v. Kennedy, supra,* and apply a broader standard under the Arkansas Constitution, giving greater protection than that afforded by the United States Constitution. Mr. Cox suggests that we apply a standard as to not reward gross prosecutorial misconduct with a retrial forcing him to again be subjected to jeopardy. He contends that due process mandates a double-jeopardy bar on these egregious facts.

Mr. Cox compares the facts of this case to two prior cases decided by our supreme

court. In *Holder v. State,* 58 Ark. 473, 25 S.W. 279 (1894), the supreme court found reversible error based on the highly reprehensible conduct of a prosecutor who cross-examined the defendant about an alleged rape in another state with no supporting evidence. And in *Dillon v. State,* 311 Ark. 529, 844 S.W.2d 944 (1993), the supreme court reversed a conviction where the prosecutor had asked questions without a good-faith factual basis ₗ₁₀concerning the defendant's alleged raping of motorists he had stopped during his duties as a deputy sheriff.

█ We review a trial court's denial of a motion to dismiss on double-jeopardy grounds de novo. *Winkle v. State,* 366 Ark. 318, 235 S.W.3d 482 (2006). When the analysis presents itself as a mixed question of law and fact, the factual determinations made by the trial court are not reversed unless clearly erroneous. *Id.* However, the ultimate decision by the trial court that the defendant's protection against double jeopardy was not violated is reviewed de novo, with no deference given to the trial court's determination. *Id.* Applying these standards to the case at bar, we hold that the trial court committed no error in denying Mr. Cox's motion to dismiss on double-jeopardy grounds.

As an initial matter, we conclude that Mr. Cox's reliance on our supreme court's decisions in *Holder, supra,* and *Dillon, supra,* is misplaced. In both of those cases the supreme court reversed and remanded for a new trial as a result of the prosecutors' misconduct. Neither of those holdings barred retrial by the State, and there has yet to be any appellate Arkansas case where double jeopardy was held to have barred retrial based on prosecutorial misconduct.

In *Espinosa v. State,* 317 Ark. 198, 876 S.W.2d 569 (1994), our supreme court applied the *Oregon v. Kennedy* standard.

Applying that standard to the facts of this case, the record supports the trial court's finding that the prosecutor did not intentionally cause a mistrial or goad Mr. Cox into requesting one. After the recording of Mr. Cox's testimony on direct examination was played to the trial court to determine whether the defense had opened the ₗ₁₁door to a prior allegation of abuse, the prosecutor argued that he misunderstood the testimony and believed that some of the questioning pertained to the other accusation, particularly because it preceded specific questions about M.W. The prosecutor stated that he asked the question in good faith, and he asked for an admonition to the jury to disregard it. While it may have been advisable to approach the bench before asking the question, the circumstances did not demonstrate that the question was intended to cause a mistrial. This is particularly so because, contrary to Mr. Cox's argument, a mistrial was not to the State's advantage. M.W.'s testimony about the sexual contact was alone sufficient to sustain a conviction, *see Brown v. State,* 374 Ark. 341, 288 S.W.3d 226 (2008), and in addition to her testimony, there was testimony from three witnesses that Mr. Cox apologized repeatedly for what he had done. The trial was not going badly for the State as Mr. Cox suggests. There was no reason for the State to want a mistrial and little indication that it intentionally goaded Mr. Cox into requesting one.

Finally, we reject Mr. Cox's invitation to adopt a broader standard under the Arkansas Constitution. In *Jackson v. State,* 322 Ark. 710, 911 S.W.2d 578 (1995), the Arkansas Supreme Court was specifically asked to adopt a broader standard than that required under *Oregon v. Kennedy, supra,* and refused to adopt a different standard under state law. Recently, in *Green v. State,* 2011 Ark. 92, 380 S.W.3d 368, our supreme court again declined to

extend the holding of *Oregon v. Kennedy* beyond those instances in which the prosecution has intentionally provoked a mistrial. We are bound by the decision of our supreme court, *Lee* <sub>12</sub>*v. State,* 2010 Ark. App. 224, 2010 WL 893628, and we must apply the federal constitutional standard it has adopted and followed for nearly twenty years.

We hold that there was no error in the trial court's denial of appellant's motion to dismiss. Because there has been no double-jeopardy violation, the State is authorized to retry Mr. Cox for second-degree sexual assault.

Affirmed.

PITTMAN and GLADWIN, JJ., agree.