Cite as 2019 Ark. App. 443

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR-18-996

|  |  |
|---|---|
| PARNELL MAY | **Opinion Delivered:** October 2, 2019 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION [NO. 60CR-17-169] |
| V. |  |
| STATE OF ARKANSAS |  |
| APPELLEE | HONORABLE LEON JOHNSON, JUDGE |
|  | AFFIRMED |

### WAYMOND M. BROWN, Judge

Appellant Parnell May was charged with the first-degree murder of Ann Mireles. He sought and was granted the right to represent himself. However, the court subsequently revoked that right after appellant disrupted the proceedings and had to be physically removed from the courtroom, in front of the jury, at least twice over the course of a couple of days. The court then appointed standby counsel, Llewellyn Marczuk, to represent appellant for the remainder of the jury trial. Marczuk requested a mistrial several times, and the court finally granted a mistrial after appellant also requested it. The State filed an amended information against appellant adding the charge of capital murder. Appellant filed a motion to dismiss the charges against him based on double jeopardy. The court held a hearing on appellant's motion and subsequently denied it. Appellant brings this

interlocutory appeal contending that the court erred in denying his motion to dismiss. We affirm.

Appellant's jury trial began on January 24, 2018. On the third day of trial, the following pertinent colloquy took place outside the presence of the jury:[1]

| | |
|---|---|
| THE COURT: | Hold on a second. Let's do this first. Mr. May − |
| MR. TOME: | Mr. May. |
| THE COURT: | -- come over here with Mr. Tome. Mr. Marczuk. Mr. Marczuk. |
| MR. MARCZUK: | Yes, Judge Johnson. |
| THE COURT: | All right. Mr. Sudduth, do you want to come up as well or − |
| MR. SUDDUTH: | No, sir. |
| THE COURT: | All right. Okay. All right. Mr. May, now, we've been talking. And Mr. Marczuk has asked, because he is going to be counsel for this case, the rest of the case, that he wants to prepare − |
| MR. MAY: | No, I'm pro se. |
| THE COURT: | That he's -- that he's asking for a certain − he's asking for a mistrial so that he can present other evidence and prepare this in a way that may help you and your case. |
| MR. MAY: | Hmm. |
| THE COURT: | As well as some mitigating circum -- witnesses who may help in case you are found guilty. |
| MR. MAY: | Jesus. |
| THE COURT: | That will maybe help you if you are found guilty to help the sentencing aspect of it. That he would like some time, since he is going to be taking over, to do this. And that's what he's asked |

[1]All quotes and colloquies are as abstracted by appellant.

2

for us to have – he's requested a mistrial, which means that they will try it over, you know –

MR. MAY: Hey.

THE COURT: -- and so -- and he's asked for that. However, it's my understanding that only you can request a mistrial. If you would like to talk –

MR. MAY: That means we get the pathologist?

THE COURT: Well, talk to them and they will talk –

MR. MAY: I want that confirmed. I want that toxicology --

THE COURT: See, Mr. -- Mr. May --

MR. MAY: That's --

THE COURT: Wait. Shh. Shh. Talk to your attorneys. They can't guarantee you anything.

MR. MAY: -- fair trial?

THE COURT: Mr. May --

MR. MAY: I love it.

THE COURT: Mr. May.

MR. MAY: I love it.

THE COURT: Mr. May, everybody's trying to help you and save you --

MR. MAY: I -- I know I likes that.

THE COURT: Okay. I thought -- okay. But you won't listen. So I'm asking you right now, talk to your attorneys and nobody's going to make any guarantees about anything –

MR. MAY: And I'm -- that way I pro se still though.

THE COURT: -- other than if you don't, so talk to your attorneys right now and I'm going to give you a few more – I'll give you about two

3

minutes. And the clock is ticking. Hey, man, I need more than that. Seen it, he ain't going to do it. He ain't going to do it.

MR. MAY: Give me your word today that you're going to get that toxicology person up here.

[OFF THE RECORD DISCUSSION.]

MR. MAY: I think we have an understanding now, Your Honor.

THE COURT: Mr. Marczuk.

MR. MAY: Don't let me down.

THE COURT: Mr. May, now you need to listen to my question and answer my question. I don't want to hear anything else.

MR. MAY: Yes, sir.

THE COURT: Yes or no; is that understood?

MR. MAY: Yes, sir.

THE COURT: All right. Mr. Marczuk has requested a mistrial in this case. The State believes only you can request a mistrial. Are you requesting a mistrial in this case?

MR. MAY: First of all −

THE COURT: Yes or no, Mr. −

MS. MARIANI: Does he know what a mistrial means?

THE COURT: I didn't -- they informed him. They did tell you what a mistrial meant; is that correct?

MR. MAY: I will get to −

THE COURT: No, no. They told you what a mistrial is, correct?

MR. MAY: Is it −

THE COURT: Mr. Marczuk told you −

4

MR. MAY: Will you explain what a mistrial is for me, if you don't mind, Your Honor?

THE COURT: That's -- no, I can't – that's for Mr. Marczuk to do.

MR. MAY: I would like to -- with all due respects, not trying to delay nothing (unintelligible) but I would -- I would -- I would prefer that long as I can have that fair chance to get my witness, yes.

THE COURT: Okay. You would request a mis -- are you requesting a mistrial?

MR. MAY: Did you understand what I just said?

THE COURT: I'm – it's not -- it can't be condition.

MR. MAY: Oh.

THE COURT: Are you requesting a mistrial?

MR. MAY: Oh. Yes. Yes. Yes.

THE COURT: You are requesting a mistrial?

MR. MAY: Yes, sir, I am requesting a mistrial, Your Honor.

THE COURT: And that's on the advice of counsel; is that correct?

MR. MAY: It's by probably some reasonable advice of this counsel.

THE COURT: Of your counsel, Mr. Marczuk and Mr. Tome, correct?

MR. MAY: I -- I could not consult with -- what did you say?

THE COURT: That's on the advice of Mr. Marczuk and Mr. Tome, correct?

MR. MAY: Of their advice, yeah, I -- I can agree with that.

THE COURT: All right. Mr. Marczuk. Stand up, please.

MR. MAY: Uh-huh.

MR. MARCZUK: Look at Judge Johnson.

THE COURT:        No, I'm just saying –

MR. MAY:          Now, look, don't let me down.

THE COURT:        -- so he's requesting a mistrial?

MR. MARCZUK:      Yes, sir.

MR. MAY:          You go get that toxicology person.

THE COURT:        And so I believe that –

MR. MAY:          I know what that report is going to say.

THE COURT:        -- that cures double jeopardy, correct?

MR. MARCZUK:      Yes, sir.

THE COURT:        And State?

MS. SATTERFIELD:  You should clear -- as long as Mr. May understands –

MR. MARCZUK:      Listen, listen. Listen.

MS. SATTERFIELD:  -- that this trial is going to stop today, that this will be moved to another day.  It'll be another jury.  As long as he understands that's what a mistrial means –

MR. MAY:          Uh-huh.  I'm hearing it.

MS. SATTERFIELD:  -- and that is indeed what he wants.

MR. MARCZUK:      You kind of spoke over each other.  Just don't speak over Ms. –

MS. SATTERFIELD:  And there's no guarantee that he will be allowed to proceed pro se.

THE COURT:        Right.

MR. MAY:          Now, hold it.

THE COURT:        That's –

6

| | |
|---|---|
| MR. MAY: | And do they -- do they have a law for that? |
| MR. MARCZUK: | You'll have to agree to it. |
| MS. SATTERFIELD: | I mean, he can't -- he can't make it a conditional – |
| MR. MAY: | Uh-huh. |
| THE COURT: | Oh, it's not a condition on anything. Right. |
| MS. SATTERFIELD: | Okay. Very well. |
| THE COURT: | All right. No. But there – |
| MS. SATTERFIELD: | We can take that up at another time. |
| MR. MAY: | Man, look a here, man, I'm innocent. |
| THE COURT: | There are no conditions, that's right, whether he can or cannot. |
| MR. MAY: | And that toxicology report will prove it. |
| MR. MARCZUK: | Listen. Listen. Listen. |
| THE COURT: | All right. |
| MS. MARIANI: | No conditions. |
| THE COURT: | That's right. So I'm just saying there's no conditions – |
| MR. MARCZUK: | Yes, sir. |
| THE COURT: | -- on whether he can or cannot. That's – he's asking for today for a mistrial. He said, yes, correct, Mr. May? |
| MR. MAY: | Yes, sir. |

The jurors were returned to the courtroom and dismissed. The State filed an amended information on May 7, 2018, adding the charge of capital murder. Contending that he never consented to a mistrial, or in the alternative, that the court goaded him into requesting a mistrial, appellant moved to dismiss the charges against him on the ground that a retrial

would constitute double jeopardy. The court held a hearing on appellant's motion on October 1, 2018, and orally denied it. A written order denying appellant's motion to dismiss was filed on October 9, 2019. Appellant filed this interlocutory appeal on October 15, 2019.

Our supreme court has long recognized the right to an immediate appeal from the denial of a motion to dismiss on double-jeopardy grounds.[2] The Fifth Amendment to the United States Constitution and Article 2, Section 8, of the Arkansas Constitution require that no person be twice put in jeopardy of life or liberty for the same offense. The Double Jeopardy Clause protects criminal defendants from (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.[3]

We review a circuit court's denial of a motion to dismiss on double-jeopardy grounds de novo on appeal.[4] When the analysis presents itself as a mixed question of law and fact, the factual determinations made by the circuit court are given due deference and are not reversed unless clearly erroneous.[5] However, the ultimate decision by the circuit court that the defendant's protection against double jeopardy was not violated is reviewed de novo with no deference given to the circuit court's determination.[6]

---

[2]*Dilday v. State*, 369 Ark. 1, 250 S.W.3d 217 (2007).

[3]*Green v. State*, 2011 Ark. 92, 380 S.W.3d 368.

[4]*Cox v. State*, 2012 Ark. App. 499, 423 S.W.3d 131.

[5]*Id.*

[6]*Id.*

8

In *Oregon v. Kennedy*,[7] the United States Supreme Court stated that, although there is ordinarily no double-jeopardy bar to retrial when the defendant requests the termination of his first trial, there is a narrow exception that will bar retrial. The Supreme Court held that the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial.[8] In other words, only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first trial on his own motion.[9]

Appellant argues that the court's "coercive atmosphere as well as the directly suggestive statements to May goaded him into giving up his right to continue the trial." Appellant's right to proceed pro se was revoked when he could not follow the rules of the court and continued to be disruptive both in front of and outside of the presence of the jury. Appellant's attorney asked for a mistrial because he did not feel that he could adequately defend appellant at that stage of the trial. The colloquy above shows that appellant also asked for and/or consented to a mistrial. The court continuously questioned appellant and explained to appellant that the mistrial would be without any conditions to

[7]456 U.S. 667 (1982).

[8]*Id.*

[9]*Id.*

ensure that a mistrial was, in fact, what appellant wanted.  Appellant welcomed a mistrial, suggesting that he wanted to obtain a toxicology report to prove his innocence.  These facts do not lead us to believe that the court intended, by its conduct, to provoke appellant into moving for a mistrial.  We hold that appellant was not goaded into requesting a mistrial.  Accordingly, the court did not err by denying appellant's motion to dismiss on double-jeopardy grounds.

Affirmed.

KLAPPENBACH and HIXSON, JJ., agree.

*Lee D. Short* and *Willard Proctor, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Karen Virginia Wallage*, Ass't Att'y Gen., for appellee.